**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARINA LaFLEUR, and** | ) | |
| **THERESA CROY,  individually and** | ) | |
| **on behalf of all others similarly situated,** | ) | |
| | ) | **CASE NO.** |
| **Plaintiffs,** | ) | |
| | ) | **JUDGE:** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE:** |
| **DOLLAR TREE STORES, INC., d/b/a** | ) | |
| **DOLLAR TREE and d/b/a DEALS,** | ) | <u>**JURY TRIAL DEMANDED**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**COLLECTIVE AND CLASS ACTION COMPLAINT**</u>

The Plaintiffs, MARINA LaFLEUR (hereinafter "LaFleur" or "Plaintiff") and THERESA CROY (hereinafter "Croy" or "Plaintiff"), bring this lawsuit against Defendant DOLLAR TREE STORES. INC., d/b/a DOLLAR TREE and d/b/a DEALS (hereinafter "Dollar Tree" or "Defendant") on behalf of themselves and all others similarly situated, by and through their undersigned counsel of record, upon personal knowledge as to those allegations in which they possesses and upon information and belief as to all other matters, pursuant to the Fair Labor Standards Act, 29 U.S.C.A. §201 *et seq*. (hereinafter "FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*., (hereinafter "IMWL" ), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. (hereafter "IWPCA") and other state wage laws and for this cause of action, and in doing so, state as follows:

**I.      <u>NATURE OF THIS ACTION</u>**

1.      This is an individual, class and collective action brought to remedy widespread violations of the federal and state wage and hour laws by Defendant, DOLLAR TREE, that have

deprived Plaintiffs, along with other current and former "Hourly Associates" and "Assistant Managers," along with other similarly situated individuals, of lawful wages to which they are entitled. Defendant's nationwide policy, pattern or practice of requiring Hourly Associates and Assistant Managers to work "off the clock" without getting paid for that time and overtime, has caused Plaintiffs, the collective and the class, significant monetary losses and is in direct violation of the federal and state wage laws under which Plaintiffs bring this action.

2.      Defendant's willful, knowing and/or reckless action of intentionally requiring Hourly Associates and Assistant Managers to work "off-the-clock", and therefore, denying them wages and overtime wages, is in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*(the "FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. (the "IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (the "IWPCA") and the statutory laws of other States where Defendant operates and has stores, including, Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming (hereinafter referred to as "other state wage laws").

3.      Under the FLSA, the IMWL and other state wage laws, there is a general rule that employees must be compensated at a rate of one and a half (1½) times their regular rate of pay for all hours worked in excess forty (40) hours a week. 29 U.S.C. §207; and 820 ILCS 105/4a.

Despite these statutory requirements, Defendant requires thousands of its Assistant Store Managers to work without any regular compensation and overtime pay on a consistent basis.

4.     For at least five (5) years prior to the filing of this complaint, Defendant has willfully committed widespread violations of the FLSA, IMWL, IWPCA and/or other state wage laws by refusing and/or failing to pay such employees for all hours worked, including refusing regular/straight time and overtime hours worked in excess of forty (40) hours per week at a rate of one-and-one-half times their regular rate of pay.

5.     Defendant's acts violate federal and state wage laws, affecting thousands of its current and former employees. Accordingly, Plaintiffs, on behalf of themselves, and all others similarly situated,  bring this action seeking equitable and declaratory relief, as well as nominal, compensatory, liquidated and punitive damages at law and other incidental monetary and non-monetary remedies necessary to make the Plaintiffs and others similarly situated whole, as well as Plaintiffs' reasonable attorneys' fees and costs.

## II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because the action involves a federal statute, 29 U.S.C. §216(b). The Plaintiffs do not bring any claims under any collective bargaining agreement.

7.     The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. 2201 and 2202.

8.      The amount in controversy in this matter exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs.

9.      At least one member of the Rule 23 Class is a citizen of a state different than that of Defendant.

10.     Venue is proper in the Northern District of Illinois, Eastern Division under 28 U.S.C. § 1391. Defendant does business in the Northern District of Illinois, Eastern Division and Plaintiffs are residents of the Northern District of Illinois, Eastern Division. Defendant is subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit.

### III.    PARTIES

**a.    Plaintiffs:**

11.     Plaintiff Marina LaFleur is a former Assistant Manager employed by Defendant Dollar Tree in Kane County, Illinois, between October 2007, and March 15, 2011. She is a resident of Kane County, Illinois, and a citizen of the United States of America.

12.     Plaintiff Theresa Croy is a current Assistant Manager of Dollar Tree and a former hourly Associate of Dollar Tree. Plaintiff Croy was an Hourly Associate of Dollar Tree from November 2009, through April 2010. Plaintiff Croy has been an Assistant Manager from April 2010, through the present. Plaintiff Croy is employed by Dollar Tree in Kane County, Illinois, is a resident of Kane County, Illinois, and a citizen of the United States of America.

**b.    Defendant:**

13.     Defendant Dollar Tree is a publicly traded fortune 500 corporation with $5.88 Billion dollars in net sales in 2010. Defendant Dollar Tree is a Virginia corporation headquartered at 500 Volvo Parkway, Chesapeake, Virginia 23320. Defendant Dollar Tree does

business nationwide, with thousands of stores located in all 48 contiguous states.

14.     Defendant Dollar Tree maintains hundreds of stores throughout Illinois, employs thousands of associates throughout Illinois, maintains distribution centers in Illinois and otherwise conducts substantial business in the State of Illinois. According to Dollar Tree's website:

> *"The best part is that there is probably a **Dollar Tree store near you**! We are a national company with thousands of stores conveniently located in shopping centers and malls in all 48 contiguous states."*

15.     According to its 2010 Annual Report, Defendant Dollar Tree is the "World's leading operator of $1 price –point variety stores," it is *"the* destination for value for millions of shoppers coast-to-coast" and it is operations are supported by the work of over 60,000 associates nationwide.

16.     Defendant Dollar Tree does not offer any franchising opportunities, rather all of its stores are corporate owned and operated.  Defendant Dollar Tree represents to investors that*:*

*"All of our stores are operated from our Corporate Headquarters in Chesapeake, VA."* http://www.dollartreeinfo.com/investors/faqs/**.**

## IV.   FACTUAL ALLEGATIONS

17.     Defendant Dollar Tree specializes in providing a wide range of products to consumers at reduced costs. According to Dollar Tree's website:

> *"Just as important, especially during these tough economic times, we continue to offer our customers products they need at extreme values! We carry a broad, exciting mix of merchandise that includes many trusted national and regional brands. Some of the product departments you'll find at Dollar Tree include housewares, glassware, dinnerware, cleaning supplies, candy, snacks, food, health and beauty, toys, gifts, gift bags and wrap, party supplies, stationery, craft supplies, teaching supplies, books,*

*seasonal décor, and more! Everything you need for every day, every holiday, every occasion... and every single item is only $1 (or less)!"*

18.     In an effort to provide low cost merchandise to its customers and still maximize profits, Defendant Dollar Tree has engaged a policy, pattern or practice of requiring its thousands of Hourly Associates and Assistant Managers to work without pay, in several ways, including, but not limited to: (1) requiring Hourly Associates and Assistant Managers to clock-out for a half-hour lunch break, but then require them to work during that uncompensated lunch break; (2) requiring Hourly Associates and Assistant Managers to increase store productivity by working "off the clock"; and (3) requiring Hourly Associates and Assistant Managers to clock-out to prepare deposits at the store and then make those deposits at the bank. Deposits are made at the end of each shift and Hourly Associates and Assistant Managers are not compensated for their time spent performing this work.

19.     Defendant Dollar Tree maintains operating policies and procedures that apply uniformly to all stores nationwide. Regardless of the size of the store, its location or district, every detail of how the store is managed and run is uniformly fixed, mandated and controlled by Defendant through its policies, directives, and mandated procedures.

20.     Defendant Dollar Tree has standard and uniform human resource and employment policies and practices, including policies and practices governing wages and compensation, that apply to all of its employees nationwide.

21.     Defendant Dollar Tree has a nationwide policy and practice of paying both Hourly Associates and Assistant Managers on an "hourly" basis. Neither job classification receives a set salary.

22.     At all times material to this action, Plaintiff, Marina LaFleur, was employed as an Assistant Manager by Defendant, Dollar Tree, and was a full time, permanent employee. Plaintiff LaFleur was employed in this capacity from in or about October 2007, through on or about March 15, 2011.

23.     At all times material to this action, Plaintiff, Theresa Croy, was employed by Defendant, Dollar Tree, as a permanent employee, in both the positions of Hourly Associate and Assistant Manager. From in or about November 2009, through in or about April 2010, Plaintiff Croy was employed as a full time, Hourly Associate. From in or about April 2010, through in or about January 2011, Plaintiff Croy was employed as a "part-time" Assistant Manager. From in or about January 2011, through the present, Plaintiff Croy has been and continues to be employed by Defendant as a "full-time" Assistant Manager.

24.     This action is brought to recover unpaid compensation, in the form of compensation for time which was worked "off the clock," which are owed to Plaintiffs and all current and former employees of Defendant who are similarly situated, pursuant to the FLSA, the IMWL, the IWPCA and the like statutes of all of the 48 contiguous states where Dollar Tree operates.

25.     Defendant has a uniform policy and practice of consistently requiring their Hourly Associates and Assistant Managers to work "off the clock" and have denied them wages and overtime wages due and owing for such work.

26.     Defendant has a policy requiring two (2) employees to make the deposits at the end of each shift, so Hourly Associates and Assistant Managers were routinely required to work this uncompensated together.

27.     Plaintiffs LaFleur and Croy were employed by the Defendant in the position of Assistant Manager.  In that position, Plaintiffs were required to work "off the clock" at various times during the work day, including but not limited to: (1) after their shifts had ended; (2) when they were required to clock out but continue working and during their lunch break; and (3) at other times during their respective shifts when they were required to clock out but continue working.

28.     Assistant Managers, including Plaintiffs LaFleur and Croy, are routinely required to clock-out at the end of their shift, prepare deposits at the store, travel to the bank and then make the deposits for Dollar Tree. This process equates to at least 15 minutes of unpaid time for every occasion on which Plaintiffs and similarly situated current and former Assistant Managers are required to work "off the clock" in this manner.

29.     Additionally, Assistant Managers, including Plaintiffs LaFleur and Croy, are required to clock out for a thirty minute lunch break during each shift, yet required to work during this time period without clocking back in. During this "off the clock" time, Plaintiffs and other current and former Assistant Managers are required to perform tasks such as cashier, handling customer inquiries or complaints, stocking, unloading freight trucks, facing merchandise, cleaning, and other job duties.

30.     Hourly Associates, including Plaintiff Croy, are routinely required to clock-out at the end of their shift, prepare deposits at the store, travel to the bank and then make the deposits for Dollar Tree. This process equates to about fifteen (15) minutes of unpaid time for every occasion on which Plaintiff and similarly situated current and former Hourly Associates are required to work "off the clock" in this manner.

31.     Additionally, Hourly Associates, including Plaintiff Croy, are required to clock out for a thirty (30) minute lunch break during each shift, yet required to work during this time period without clocking back in. During this "off the clock" time, Plaintiff and other similarly situated current and former Hourly Associates are required to perform tasks such as cashier, handling customer inquiries or complaints, stocking, unloading freight trucks, facing merchandise, cleaning and other job duties.

32.     Assistant managers, including Plaintiffs, are routinely scheduled to work forty (40) hours per week, but because Defendant required Assistant Managers, including Plaintiffs, to work "off the clock", Assistant Managers additionally work approximately 30 to 45 minutes each day without compensation. If Assistant Managers, including Plaintiffs, had been compensated for the 30 to 45 minutes each day that they worked beyond their regularly scheduled 40 hours per week, they would have worked those additional times as overtime.

33.     Hourly Associates were usually scheduled to work just under forty (40) hours per week, to avoid paying them overtime, but on many occasions were required to work forty hours or more per week.

34.     Every day, Defendant required Hourly Associates to work "off the clock" for 30 to 45 minutes each day without compensation.  Hourly Associates have been denied both straight time wages and overtime wages.

35.     Plaintiffs and all similarly situated current and former Hourly Associates and Assistant Managers were not, and are not, paid regular compensation and/or overtime compensation for all of the time they work.  Plaintiffs and all similarly situated current and former employees who elect to participate in this action seek unpaid regular time and/or

9

overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

36.     Defendant Dollar Tree explained in its 2010 Annual Report that: "In 2007, legislation was enacted that increased the Federal Minimum Wage from $5.15 an hour to $7.25 an hour over a two year period with the final increase being enacted in June 2009. As a result, our wages increased in 2009 and through the first half of 2010; ***however, we partially offset the increase in payroll costs through increased productivity and continued efficiencies in product flow to our stores.***" (emphasis added) Defendant Dollar Tree further acknowledges, in its 2010 Annual Report, that wage rates are "(c)osts that are critical to our operations."

37.     Defendant Dollar Tree offsets payroll costs by forcing Hourly Associates and Assistant Managers to perform work "off the clock" and without pay.

38.     Defendant Dollar Tree "increases productivity" by forcing Hourly Associates and Assistant Managers to perform more work and by refusing to pay them for their work.

39.     At all times material to this action, Defendant was and is an enterprise engaged in commerce as defined by § 203(s)(1) of the FLSA.

40.     At all times relevant to this action, Defendant was the "employer" of Plaintiffs as defined by § 203(d) of the FLSA.

41.     At all times material to this action, Plaintiffs were "employees" of Defendant as defined by § 203(e)(1) of the FLSA, and worked for Defendant within the territory of the United States within three years preceding the filing of this lawsuit.

42.     The provisions set forth in §§ 206 and 207, respectively, of the FLSA apply to Defendant and all similarly situated Hourly Associates and Assistant Managers who are or were

covered by §§ 206 and 207 of the FLSA during their employment by Defendant.

43.     On a daily basis, continuous and regular basis, Plaintiffs and all similarly situated Hourly Associates and Assistant Managers are required to work without compensation, including regular and overtime compensation.

44.     Defendant has intentionally failed and/or refused to pay Plaintiffs and all other similarly situated current and former Hourly Associates and Assistant Managers compensation according to the provisions of the FLSA and applicable state wage laws.

45.     Defendant's systems, policies, patterns or practices relating to its non-payment of both regular and overtime compensation to Hourly Associates and Assistant Managers have existed since at least 2007.

46.     As a result of Defendant's violations of the FLSA, Plaintiffs, as well as all other similarly situated employees, have suffered damages by failing to receive compensation in accordance with § 207 of the FLSA and applicable state wage laws.

47.     Defendant has intentionally and repeatedly misrepresented the true time worked by their Hourly Associates and Assistant Managers, as well as their entitlement to both regular and overtime compensation for the time that they worked "off the clock" in order to avoid suspicion and inquiry by employees regarding their entitlement to monies owed to them. Plaintiffs, as well as all similarly situated present and former employees, relied upon these misrepresentations by Defendant and were unable to determine their true wages under the FLSA by the exercise of reasonable diligence because of those misrepresentations.

48.     As a result of the actions of Defendant in fraudulently concealing the true time worked by their employees under the FLSA, the applicable statute of limitations governing

FLSA actions at 29 U.S.C. § 255(a) is tolled for as long as Defendants engaged or engage in the fraudulent and misleading conduct set forth above, which is a period of at least ten (10) years. Defendant is estopped from raising such statute of limitations as a bar.

49.    According to Jim Bailey, a former Store Manager of Defendant, requiring Hourly Associates and Assistant Managers to work "off the clock" in the manners described herein is a common and uniform policy, pattern or practice of Defendant, throughout all of its locations. Mr. Bailey worked as a Manager at Defendant's Elgin, Illinois store, where he personally observed the policies, patterns or practices complained of herein. Mr. Bailey also worked as a Manager at Defendant's Wheaton, Illinois store, where personally observed the policies, patterns or practices complained of herein. Additionally, Mr. Bailey was trained at Defendant's Darien, Illinois location, where he personally observed the policies, patterns or practices complained of herein. Finally, Mr. Bailey was further trained at Defendant's Downers Grove, Illinois location, where he personally observed the policies, patterns or practices complained of herein. According to Jim Bailey, every store's operations were controlled by the same corporate office at all of the various locations where he worked.

50.    According to former Store Manager, John Buzber, requiring Hourly Associates and Assistant Managers to work "off the clock" in the manners described herein is a common and uniform policy, pattern or practice of Defendant, throughout all of its locations. Mr. Buzber worked as a Manager at Defendant's Elgin, Illinois store, where he personally observed the policies, patterns or practices complained of herein. Mr. Buzber also received his first "Manager" training at Defendant's Elgin, Illinois store, where personally observed the policies, patterns or practices complained of herein. Additionally, Mr. Buzber was trained at Defendant's Darian,

12

Illinois location, where he personally observed the policies, patterns or practices complained of herein. Finally, Mr. Buzber was further trained at Defendant's Schaumburg, Illinois location, where he personally observed the policies, patterns or practices complained of herein. According to Mr. Buzber, every store's operations were controlled by the same corporate office at all of the various locations where he worked.

51.     Additionally, Plaintiffs LaFleur and Croy worked at Defendant's Geneva, Illinois location where the same policies, patterns and practices complained of herein occurred on a regular and consistent basis.

52.     According to both former Store Managers, Bailey and Buzber, Defendant fostered, encouraged, knew about and ratified Hourly Associates working "off the clock" by controlling every aspect of the management and operations of its stores at the Corporate and District levels. Store Managers were given strict and specific instructions by the Corporate and District offices regarding what work and what amount of work had to get done each week. In addition, Defendant's Corporate and District offices dictated precise amounts of "employee hours" allotted for a given week and if Store Managers exceeded those allotted employee hours, they would be severely reprimanded, disciplined and even terminated. By dictating an excessive, unreasonable and unrealistic workload and severely and unfairly limiting the number of employee work hours allotted each week, Defendant, by and through its Corporate and District offices, intentionally and willfully created, encouraged, knew about and ratified an environment where employees were forced to work "off the clock" and where Store Managers could not report all hours worked for Hourly Associates and Assistant Managers, without retaliation, discipline and termination for exceeding the allotted employee work hours for the given week.

13

Quite simply, Defendant stacked the deck so that it was impossible for Hourly Associates and Assistant Managers to perform the amount of work within the allotted employee work hours for a given week. This forced Hourly Associates and Assistant Managers to work "off the clock" in order to get the work done.

53.     There are thousands of similarly situated current and former Hourly Associates and Assistant Managers of Defendant who have been improperly compensated in violation of the FLSA and applicable state wage laws, and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendant and are readily identifiable and locatable through Defendant's records.

54.     Defendant further has engaged in a wide-spread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated Hourly Associates and Assistant Managers in accordance with § 207 of the FLSA and the applicable state wage laws.

55.     As a result of Defendant's violations of the FLSA, Plaintiffs, as well as all other similarly situated employees, have suffered damages by failing to receive compensation in accordance with § 207 of the FLSA.

56.     In addition to the amount of unpaid wages, overtime wages and benefits owed to Plaintiffs and all similarly situated current and former Hourly Associates and Assistant Managers, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and prejudgment interest.

57.     Defendant's actions in failing to compensate Plaintiffs, as well as all other

similarly situated current and former Hourly Associates and Assistant Managers, in violation of the FLSA, are willful, intentional and with reckless disregard for federal and state law and for the rights of the Plaintiffs and the collective/class.

58.    Defendant has not made a good faith effort to comply with the FLSA, rather has knowingly engaged in the conduct alleged herein in order to reduce its payroll/wage costs and increase its net revenues.

59.    Plaintiffs, and all other similarly situated current and former Hourly Associates and Assistant Managers, are also entitled to an award of attorney's fees pursuant to 29 U.S.C. § 216(b).

60.    Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this lawsuit for lost wages, overtime wages, back-pay, declaratory judgment, injunctive relief, liquidated damages, and compensatory and punitive damages is their only means of securing adequate relief.

61.    Plaintiff Croy is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

62.    All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

63.    All allegations pled herein are pled with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

15

## V.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

### A.   THE IMWL AND OTHER STATE WAGE LAWS CLASS

64.     Plaintiffs bring claims under IMWL, IWPCA and other state wage laws as an individual and as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Under Rule 23 the Class is defined as:

> "all current and former Hourly Associates and Assistant Store Managers that were not paid wages and overtime compensation at any time from five (5) years prior to the filling of this complaint and until a judgment is entered in this case" (the "Class" and "Class Period," respectively).

Excluded from the Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in Defendant; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

65.     **Numerosity**: The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant. Upon information and belief, and based upon Defendant's representations on its website that it operates over 4,000 stores in all 48 contiguous states. Plaintiffs estimate that there are tens-of-thousands of putative class members nationwide.

66.     **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class predominate over any question solely affecting individual

members of the Class, including, but are not limited to:

a.      Whether Defendant employed Plaintiffs and members of the Class within the meaning of the IMWL and/or other similar state statutes;

b.      Whether Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

c.      Whether Plaintiffs and members of the Class were required or encouraged through fear of discipline and reprimand, to work "off the clock" by clocking out and then having to prepare deposits, travel to the bank and then make deposits at the bank without compensation for that time;

d.      Whether Plaintiffs and members of the Class were required or encouraged, through fear of discipline or reprimand, to "work off the clock" by being required to punch-out for a lunch break and continue working during that purported break;

e.      Whether Defendant engaged in a continuing policy, pattern or practice of requiring, or encouraging through discipline and reprimand, Plaintiffs and similarly situated Hourly Associates and Assistant Managers to work "off the clock";

f.      Whether Defendant engaged in such a continuing policy, pattern or practice to allow Defendant to require Hourly Associates and Assistant Managers to perform work in excess of forty (40) hours per week without compensating them at time-and-a-half for all hours worked beyond forty (40) hours;

17

g.    Whether Defendant controlled the managerial and operational functions of its stores through its Corporate and District offices;

h.    Whether Defendant, by and through its Corporate and District offices, required, designed, fostered, knew about, encouraged and ratified a work environment where Store Managers had to misrepresent the true hours of Hourly Associates and Assistant Managers to meet the strict, unreasonable and unrealistic workload and allotted employee work hours for a given week;

i.    Whether Defendant intentionally, willfully and/or knowingly failed to pay Plaintiffs and Class members for all hours worked and continued to fail to pay them all straight time owed and one and a half (1½) times the regular rate of pay for all work performed in excess of forty (40) hours per work week;

j.    Whether Defendant fraudulently concealed the true time worked by Plaintiffs and the Class;

k.    Whether the action of the Defendant, in fraudulently concealing the true time worked by Plaintiffs and the Class, tolls the applicable statute of limitations for as long as Defendant engaged or engages in the fraudulent and misleading conduct set forth above;

l.    whether Defendant is estopped from raising such statute of limitations as a bar;

      m.      Whether Defendant's policy, pattern or practice of not paying Plaintiffs and Class members for all straight time and overtime due and owing was done willfully, intentionally and/or with reckless disregard; and

      n.      Whether Defendant failed to pay employees for all hours worked in compliance with the IMWL, IWPCA and the similar laws of the 48 contiguous states where Defendant operates its "thousands" of stores.

67.    **Typicality**: The claims of the Plaintiffs are typical of the Class.

68.    **Adequacy**: Plaintiffs will fairly and adequately represent the interests of the Class and have no interests that are antagonistic to that of the Class. Plaintiffs have retained counsel that are experienced in class actions, collective actions and specifically, in class/collective actions involving wage and hour litigation.

69.    **Superiority**:  A class action is superior to other available methods for their fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual employees/plaintiffs either lack the financial resources or cannot justify the commitment of the large financial resources necessary to vigorously prosecute separate lawsuits in Federal court and/or State court against large corporate defendants.

70.    Defendant has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## B.    THE FLSA COLLECTIVE

71.    Plaintiffs bring their FLSA claims, pursuant to Section 16(b) of the FLSA. 29 U.S.C. §216(b). Under Section 16(b) FLSA violation claims are brought and maintained as an

"opt-in" Collective Action. *Id*. Under Section 16(b), the FLSA Collective is defined as:

> "all current and former Hourly Associates and Assistant Store Managers that were not paid wages and overtime compensation at any time from at least three (3) years prior to the filling of this complaint and until a judgment is entered in this case" (the "FLSA Collective" and "FLSA Collective Period," respectively).

Excluded from the FLSA Collective are all Hourly Associates and Assistant Managers of Defendant who have and/or do not opt-in and Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the FLSA Collective period has had, a controlling interest in Defendant and the Judge to whom this case is assigned and any member of the Judge's immediate family.

72.     Defendant has deliberately, willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as described above, by requiring and encouraging through discipline, reprimand and termination, Plaintiffs and other similarly situated Hourly Associates and Assistant Managers to work "off the clock" or otherwise not compensate Plaintiffs and other similarly situated Hourly Associates and Assistant Managers for all hours and overtime hours worked, thereby failing and refusing to properly pay Plaintiffs and other similarly situated employees wages and overtime compensation in accordance with §§ 206 and 207 of the FLSA.  Defendant knew or should have known that such was a violation of the FLSA.  Because Defendant willfully violated the FLSA by requiring Plaintiffs and the Collective to work "off the clock" or otherwise not compensating Plaintiffs and the Collective for all hours and overtime hours worked, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

73.     Plaintiffs and all other similarly situated employees are similarly situated in that they all are or were subject to Defendant's common policy, pattern or practice of requiring or

encouraging through discipline, reprimand or termination, Plaintiffs and the Collective to work "off the clock" or otherwise not compensating Plaintiffs and the Collective for all hours and overtime hours worked.

74.     Defendant is liable for improperly compensating Plaintiffs and members of the FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are thousands of similarly situated current and former Hourly Associates and Assistant Managers of Defendant who have been required to work "off the clock" or otherwise not compensated for all hours and overtime hours worked in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## V.     CAUSES OF ACTION

### COUNT ONE

**(VIOLATIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. §201 *ET SEQ*.
PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF THE FLSA COLLECTIVE)**

75.     Plaintiffs, individually and on behalf of the Class, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

76.     This claim is brought against Defendant for failure to pay wages for time worked and failure to pay overtime for time worked beyond forty (40) hours per week in violation of the FLSA § 207.

77.     Hourly Associates and Assistant Managers, including Plaintiffs, are required to clock out for a thirty (30) minute lunch break during each shift, yet required to work during this time period without clocking back in. During this "off the clock" time, Plaintiffs and other

current and former Assistant Managers are required to perform tasks such as cashier, handling customer inquiries or complaints, stocking, unloading freight trucks, facing merchandise, cleaning and other job duties. Hourly Associates and Assistant Managers are not compensated for this time.

78.     Hourly Associates and Assistant Managers, including Plaintiffs, are routinely required to clock-out at the end of their shift, prepare deposits at the store, travel to the bank and then make the deposits for Dollar Tree. This process equates to about fifteen (15) minutes of unpaid time for every occasion on which Plaintiffs and similarly situated current and former Hourly Associates and Assistant Managers are required to work "off the clock" in this manner. Defendant has a policy of requiring two (2) employees to make deposits, which doubles the number of violations for this conduct.

79.     Because of Defendant's policies and procedures, Plaintiffs and other similarly situated current and former Hourly Associates and Assistant Managers are required to work approximately 30 to 45 minutes per day without compensation. If Hourly Associates and Assistant Managers, including Plaintiffs, had been compensated for the 30 to 45 minutes each day that they worked beyond 40 hours per week, they would have worked those additional times as overtime.

80.     Defendant willfully and intentionally has refused to pay Plaintiffs and other similarly situated current and former Hourly Associates and Assistant Managers compensation according to the provisions of the FLSA.

81.     Defendant's systems, policies, patterns or practices relating to its non-payment of both regular and overtime compensation to Hourly Associates and Assistant Managers have

existed for at least three years through Defendant's business.

82.     For at least three (3) years, Defendant has been aware of the requirements of the FLSA and its corresponding regulations and its own violations of the FLSA. Despite that knowledge, Defendant has failed to pay its employees for all the regular hours they work during a forty (40) hour work week as well as failing to pay its employees time and a half for any hours worked beyond forty (40) hours per week.

83.     Defendant's actions in failing to compensate Plaintiffs, as well as all other similarly situated current and former Hourly Associates and Assistant Managers, in violation of the FLSA, are willful and intentional.

84.     Defendant has not made a good faith effort to comply with the FLSA.

85.     By reason of Defendant's violations of the FLSA, Plaintiff Croy is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

86.     By reason of Defendant's violations of the FLSA, Plaintiffs are entitled to respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), and prejudgment interest;

## COUNT TWO

## (ILLINOIS MINIMUM WAGE LAW AND OTHER SIMILAR STATE WAGE LAWS)

87.     Plaintiffs, individually and on behalf of the Class, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

88.     At all material times set forth herein, Plaintiffs were "employees" within the definition of the IMWL, 820 ILCS 105/3(c).

23

89.     At all material times set forth herein, Defendant was an "employer" within the definition of the IMWL, 820 ILCS 105/3(c).

90.     The IMWL requires hourly employees be paid for all time worked and all overtime, equal to one and a half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

91.     The similar laws of other states where Defendant Dollar Tree owns and operates stores require payment for all time worked and all overtime equal to one and a half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

92.     During the Class Period, Plaintiffs and members of the Class were not paid for all time worked and all overtime worked, as alleged herein.

93.     Defendant willfully, intentionally and/or knowingly required, ratified and encouraged through reprimand, discipline and termination, Plaintiffs and the Class not being paid for all hours worked and overtime hours worked, as alleged herein.

94.     Plaintiffs and members of the Class were regularly not compensated for all straight time hours and overtime hours worked in excess of forty (40) hours per week, in violation of the IMWL and other applicable state wage laws.

95.     Defendant's failure to comply with the IMWL, and other applicable state wage laws, was intentional, reckless and/or willful.

96.     Based on the foregoing, Plaintiffs and members of the class are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, punitive damages, attorney fees and costs pursuant to §12(a) of the IMWL. 820 ILCS 105/12, any and all other damages allowable under the other applicable state wage laws.

## COUNT THREE

## (ILLINOIS WAGE PAYMENT AND COLLECTION ACT AND OTHER SIMILAR STATE WAGE LAWS)

97.     Plaintiffs, individually and on behalf of the Class, re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

98.     At all material times set forth herein, Plaintiffs were "employees" within the definition of the IWPCA, 820 ILCS 115/2.

99.     At all material times set forth herein, Defendant was an "employer" within the definition of the IWPCA, 820 ILCS 115/13.

100.    The IWPCA, and other similar state wage laws, require an employer, such as Defendant, to compensate employees for all hours worked, as well as overtime for work performed in excess of forty (40) hours per week.

101.    Defendant failed to keep accurate records of time worked by Plaintiffs and members of the Class.

102.    Defendant did not make a good faith effort to comply with the IWPCA, and other applicable state wage laws, in respect to compensating Plaintiffs and members of the Class.

103.    Defendant intentionally and willfully failed and/or refused to pay Plaintiffs and members of the Class for all the work performed by them, as well as overtime for work performed in excess of forty (40) hours per week, as alleged herein.

104.    Defendant's failure to comply with the IWPCA, and other applicable state wage laws, was intentional, reckless and/or willful.

105.     Based on the foregoing, Plaintiffs and members of the class are entitled to recover all unpaid wages and overtime compensation and attorney fees and costs pursuant the IWPCA, 820 ILCS 115/1 *et seq*. and other applicable state wage laws.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated Hourly Associates and Assistant Managers, respectfully request the following relief:

A.     Unpaid wages and overtime compensation under the FLSA, IMWL and IWPCA;

B.     An additional and equal amount as liquidated and/or punitive damages under the FLSA and IMWL;

C.     An order directing Defendant to supply the last known names and home addresses of all similarly situated Hourly Associates and Assistant Managers during the Class period (which encompasses the Collective period) to representative Plaintiffs' counsels so that Plaintiffs may be allowed to send out notice of the Class Action and FLSA Collective Action, or that the Court issue such notice, to all persons who are presently, or have, at any time during the past five years immediately preceding the filing of this suit, been employed by Defendant as an Hourly Associate or Assistant Manager.  Such notice should inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied wages;

D.     Pre-judgment and post-judgment interest, as provided by law;

E.     Attorneys' fees and costs under the FLSA and IMWL;

F.     Appropriate equitable and injunctive relief including an order directing DOLLAR TREE to discontinue its practice of denying Hourly Associates and Assistant managers wages and overtime pay; and

G.     Such other relief as in law or equity may pertain.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.


Dated: <u>November 28, 2011</u>                    Respectfully submitted,

                                                  FOOTE, MEYERS, MIELKE & FLOWERS, LLC

                                                  <u>/s/Robert M. Foote</u>
                                                  Robert M. Foote, Esq. (#03124325)
                                                  Matthew J. Herman, Esq. (#06237297)
                                                  FOOTE, MEYERS, MIELKE & FLOWERS, LLC
                                                  3 North Second Street, Suite 300
                                                  Saint Charles, IL 60174
                                                  Telephone: (630) 232-6333
                                                  Facsimile:  (630) 845-8982

                                                  Cathleen A. Potter, Esq. (#06274154)
                                                  THE LAW OFFICE OF CATHLEEN POTTER
                                                  387 Colonial Circle
                                                  Geneva, IL 60134
                                                  Telephone: (630) 232-8449

                                                  Kathleen C. Chavez, Esq. (#6255735)
                                                  CHAVEZ LAW FIRM, P.C.
                                                  3 North Second Street, Suite 300
                                                  Saint Charles, IL 60174
                                                  Telephone: (630) 232-4480
                                                  Facsimile:  (630) 845-8982

                                                  Peter L. Currie, Esq. (#06281711)
                                                  THE LAW FIRM OF PETER L. CURRIE, P.C.
                                                  22 West Washington Street, Suite 1500
                                                  Chicago, Illinois, 60602
                                                  Telephone: (630) 862-1130
                                                  Facsimile:  (630) 845-8982


                                                  *Attorneys for Plaintiffs*