# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARINA LAFLEUR, and THERESA CROY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:11 CV 8473 Hon. Marvin E. Aspen |
| DOLLAR TREE STORES, INC., d/b/a DOLLAR TREE and d/b/a DEALS, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs Marina LaFleur and Theresa Croy filed this putative class and collective action against Defendant Dollar Tree on behalf of Store Associates and Assistant Store managers across the country.  Plaintiffs allege that Dollar Tree required or permitted them to work "off the clock" and overtime without compensation in violation of the Fair Labor Standards Act ("FLSA") and applicable state wage and hour laws.  Plaintiffs have sought conditional certification of the action, as well as equitable tolling of the FLSA's "wasting statute" of limitations.  Dollar Tree filed both a motion to dismiss and the instant motion to transfer venue on March 6, 2012.  For the reasons discussed below, we grant Dollar Tree's motion and transfer this action to the Eastern District of Virginia, Norfolk Division.

## BACKGROUND

Plaintiff LaFleur is a former Assistant Manager with Dollar Tree.  Plaintiff Croy is currently an Assistant Manager, and formerly an Hourly Associate.  Both are residents of Kane County, Illinois and have been employed by Dollar Tree at a store in Geneva, Illinois.  (Compl. ¶¶ 11–12, 22–23, 51.)

Dollar Tree is a publicly-traded corporation headquartered in Chesapeake, Virginia, with locations in 48 states that offer a wide variety of products for $1 each.  (*Id*. ¶¶ 13–17.)  All Dollar Tree stores are corporately-owned and operated.  (*Id*. ¶ 16.)  According to the Complaint, Dollar Tree "maintains operating policies and procedures that apply uniformly to all stores nationwide."  (*Id*. ¶ 19.)  Plaintiffs allege that "[r]egardless of the size of the store, its location or district, every detail of how the store is managed and run is uniformly fixed, mandated and controlled by Defendant through its policies, directives, and mandated procedures."  (*Id.*)

These uniform procedures include human resources "practices governing wages and compensation, that apply to all . . . employees nationwide."  (*Id*. ¶ 20.)  Specifically, Plaintiffs contend that Dollar Tree has nationwide policies to pay Hourly Associates and Assistant Managers on an hourly basis and to require such employees to work "off the clock."  (*Id*. ¶¶ 21, 24–34.)  For example, Plaintiffs allege that Dollar Tree requires Assistant Managers and Hourly Associates to clock out at the end of a scheduled shift, then prepare deposits at the store and travel to the bank to make the deposit—equating to at least 15 minutes of unpaid time each occasion.  (*Id*. ¶¶ 27–31.)  Employees, including Plaintiffs, are or were also forced to continue working after clocking out for their 30 minute lunch break.  (*Id.*)  Plaintiffs allege that, as a result of these practices, Dollar Tree failed to compensate them, along with similarly-situated

employees across the country, for work performed and associated overtime wages. (*Id.* ¶¶ 24, 35, 37–38, 43–44, 53.)  Based on these allegations, the Complaint brings three causes of action, alleging violations of the FLSA, the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, and similar state wage and hour laws applicable to the putative class members. (*Id.* ¶¶ 75–105.)

Dollar Tree is currently defending several similar putative class/collective actions pending in other federal district courts, including courts in Colorado, Florida, Georgia, Maryland, and Michigan. (Mem. at 2 & n.2.)  Dollar Tree has moved to transfer these cases to the Eastern District of Virginia. (*Id.*)  While four of the motions remain undecided, the district judge presiding over *Smith v. Dollar Tree Stores, Inc.* in the Northern District of Georgia granted Defendant's transfer motion on May 10, 2012. (Suppl. Auth. at 1 & Ex. A.)

## ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil matter to another district where venue is proper.  A court may transfer a case if a moving party shows that: (1) venue is proper in the district where the action was originally filed; (2) venue would be proper in the transferee court; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007).

The parties do not dispute that venue is proper in either the Northern District of Illinois or the Eastern District of Virginia. (Mem. at 5–6; Resp. at 4.)  In determining where a defendant resides for venue purposes, 28 U.S.C. § 1391(c) provides that "a defendant that is a corporation

shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." The sole defendant here is a corporation that was subject to personal jurisdiction in both the Northern District of Illinois and the Eastern District of Virginia at the time this case was brought. In addition, both courts have subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under federal law, the FLSA. Neither party contests these points.

The main concern, then, is whether transfer to the Eastern District of Virginia will serve the convenience of the parties and witnesses and the interests of justice. As the Seventh Circuit has recognized, deciding whether to transfer a case requires "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). The district court determines the weight given to each factor and has wide discretion in deciding whether transfer is appropriate. *Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The plaintiff's choice of forum is usually favored "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). As the party seeking transfer, Dollar Tree has the burden to show that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citations omitted).

In deciding whether transfer would promote convenience, courts consider such factors as "the availability of and access to witnesses, [] each party's access to and distance from resources in each forum[,] . . . the location of material events and the relative ease of access to sources of

proof." *Research Automation*, 626 F.3d at 978 (internal citations omitted).  Relevant interest of

justice factors under the transfer statute include: "docket congestion and likely speed to trial in

the transferor and potential transferee forums, . . . each court's relative familiarity with the

relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the

relationship of each community to the controversy[.]"  *Id*.  With these principles in mind, we turn

to the present motion.

## I.     Convenience (or Private) Factors

### A.     *Plaintiff's Choice of Forum*

A plaintiff's choice of forum is generally given great deference.  *Morton Grove Pharm.,*

*Inc.*, 525 F. Supp. 2d at 1044; *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167 (N.D. Ill. 1995).

In this case, however, Plaintiffs' choice deserves less weight than it otherwise would because

they purport to represent nationwide classes.  *See Gueorguiev v. Max Rave, LLC*, 526 F. Supp.

2d 853, 857 (N.D. Ill. 2007) (affording less deference "when another forum has a stronger

relationship to the dispute, when the forum of plaintiff's choice has no significant connection to

the situs of material events, or in the context of nationwide class actions").

Courts in this district have consistently held that a plaintiff's choice of forum is afforded

less deference when the plaintiff represents a class.  *Nero v. Am. Family Mut. Ins. Co.,* 11 C

1072, 2011 WL 2938138, at *2 (N.D. Ill. July 19, 2011); *Simonoff v. Kaplan,* No. 09 C 5017,

2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp.

2d 908, 914 (N.D. Ill. 2009); *Amrose v. C.H. Robinson Worldwide, Inc.*, 51 F. Supp. 2d 731, 735

(N.D. Ill. 2007); *Gueorguiev*, 526 F. Supp. 2d at 857.  Here, Plaintiffs seek to represent two

nationwide classes (one for state law claims, one for FLSA claims) covering "all current and

former Hourly Associates and Assistant Store Managers that were not paid wages and overtime compensation." (Compl. ¶¶ 64, 71.) Plaintiffs estimate the classes to include tens of thousands of individuals who work, or previously worked, at any of Dollar Tree's more than 4000 stores in the 48 contiguous states. (*Id.* ¶ 65.) If the classes are certified, "the named Plaintiffs' choice of venue will not be the home venue for all plaintiffs and any venue selection is bound to be inconvenient to some plaintiffs." *Jaramillo*, 664 F. Supp. 2d at 914. Under these circumstances, we significantly discount Plaintiffs' choice of forum, though we do not disregard it entirely. *Simonoff*, 2010 WL 1195855, at *1 (collecting cases); *see Nero*, 2011 WL 2938138, at *2; *Jaramillo*, 664 F. Supp. 2d at 914.

### B.    *Situs of Material Events*

Based on the allegations in the Complaint, material events giving rise to this litigation occurred in several locations. Plaintiffs focus their allegations on Dollar Tree's centralized control of all store operations based on uniform policies and procedures established at the Virginia headquarters. (Compl. ¶¶ 16, 19–21, 25–26, 34, 52.) They allege that "[r]egardless of the size of the store, its location or district, every detail of how the store is managed and run is uniformly fixed, mandated and controlled by Defendant through its policies, directives, and mandated procedures." (*Id.* ¶ 19.) Accordingly, Chesapeake, Virginia is undoubtedly a significant situs of material events—namely, the setting of nationwide policies.

Nonetheless, not all material events took place in Virginia. The named Plaintiffs worked in Geneva, Illinois, and their proposed classes cover employees from thousands of stores in 47 other states. Each store thus represents another location, where Plaintiffs and the putative class members allegedly performed work for which they were not paid.

-6-

While there is no single situs of materials events in this case, we conclude that this factor favors transfer.  Although the two named Plaintiffs worked in Illinois, the significance of their work and underpayment here is diluted by the existence of thousands of other locations where similar events occurred.  Put another way, Dollar Tree's conduct in Virginia is material to all of the claims brought by Plaintiffs in the Complaint, whereas the events at each store location are primarily material as to only the individuals who worked there.  In light of these circumstances, this factor favors transfer, though perhaps not overwhelmingly.

### C.   *Convenience of Witnesses*

We turn next to evaluate each forum's convenience for anticipated witnesses, which "is often viewed as 'the most important factor in the transfer analysis.'"  *Preussag Int'l Steel Corp. v. Ideal Steel & Builder's Supplies, Inc.,* No. 03 C 6643, 2004 WL 783102, at *5 (N.D. Ill. Jan. 21, 2004) (quoting *Tingstol Co. v. Rainbow Sales Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998)); *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. Aug. 16, 2006).  A party moving for transfer must show that the original forum is "clearly less convenient for its witnesses."  *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006).  In weighing this factor, courts should assess the location of potential witnesses, the nature of their expected testimony, and whether certain witnesses may be compelled to testify.  *Eugene v. McDonald's Corp.*, No. 96 C 1469, 1996 WL 411444, at *2 (N.D. Ill. July 18,1996).  For the court to make such assessments, the party seeking transfer should name potential key witnesses and provide a general statement of the witnesses' testimony.  *Vandeveld*, 877 F. Supp. at 1167–68 (citing *Heller Fin., Inc.*, 883 F.2d at 1293); *JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC*, No. 10 C 7781, 2011 WL 2518938, at *10 (N.D. Ill. June 23, 2011).  In

addition, "[t]he convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily." *Gueorguiev*, 526 F. Supp. 2d at 858; *see First Nat'l Bank*, 447 F. Supp. 2d at 913 (noting that "[m]ore weight is afforded non-party witnesses").

Here, neither side has identified any non-party witnesses whose testimony would be necessary for trial.[1]  Nor have they indicated that any witnesses would fall outside the subpoena powers of either forum.  As "[p]arty witnesses are certainly given some weight," however, this factor supports a transfer to Norfolk.  *First Nat'l Bank*, 447 F. Supp. 2d at 913.  Dollar Tree submitted the declaration of its Field Human Resources Director, who identified five categories of high-level corporate employees expected to testify at trial and the likely topics of their testimony.  (Mot. to Transfer, Ex. B, David McDearmon Decl. ¶¶ 1–17.)  Dollar Tree asserts that the absence of these individuals to testify at a lengthy trial in Chicago "would severely disrupt the corporation's business."  (*Id.* ¶ 18.)  Dollar Tree further states that adjudicating this matter in Norfolk would reduce hardship as well as costs, because any field employees traveling to Virginia to testify could obtain discounted lodging and could use resources at the corporate office to continue fulfilling their duties during trial at no added expense.  (*Id.* ¶¶ 24–25.)  Although the convenience of Dollar Tree's employee witnesses is not paramount, this factor supports transfer, particularly because travel to either venue will be equally convenient (or burdensome) for putative class members.[2]

---

[1] We assume for purposes of this motion that, if certification is granted, all putative class members would voluntarily testify like the present parties and others within their control.

[2] Plaintiffs have not identified any witnesses at all or argued that Chicago would be more convenient for a particular number or percentage of proposed class members.  While we assume that employees from across the country may testify, we have no information as to their

### D.     Convenience of the Parties

We now evaluate the convenience of the parties.  In doing so, we consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L-3 Services, Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011); *Body Science LLC v. Boston Scientific Corp.*, 11 C 3619, 2012 WL 718495, at *12 (N.D. Ill. Mar. 6, 2012) (citing *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998)).  As the movant, Dollar Tree must show that "the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff."  *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009); *see Nathan v. Morgan Stanley Renewable Develop. Fund*, 11 C 2231, 2012 WL 1886440, at *20 (N.D. Ill. May 22, 2012); *First Nat'l Bank*, 447 F. Supp. 2d at 912–13.

As Plaintiffs reside in Illinois, Virginia is presumably a less convenient venue for them. (Resp. at 6.)  Plaintiffs do not argue, however, that transfer to Virginia would impose a significant inconvenience or prevent them from meaningfully participating in the litigation, for financial or other reasons.  (*Id*.)  Dollar Tree, on the other hand, has established that litigation here poses a legitimate hardship to it, given the location of its headquarters, evidence, and witnesses in Virginia.  As discussed above, members of the nationwide class will be inconvenienced by either venue.  Accordingly, this factor weighs in favor of transfer.  *See, e.g.*, *Jaramillo*, 664 F. Supp. 2d at 915 (granting transfer in putative nationwide class action because

---

whereabouts and cannot evaluate the respective convenience of the two venues.  In addition, Plaintiffs' argument that Chicago is more convenient because of its location in the middle of the country is unpersuasive.  *See Andrade v. Chase Home Finance LLC*, No. 04 C 8229, 2005 WL 3436400, at *8 (N.D. Ill. Dec. 12, 2005) ("[O]bviously, the Central time zone has no presumptive hold on nationwide class suits.").

plaintiffs would be deposed in Illinois for their convenience but other venue was more convenient for one of the defendant corporations); *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 730–31 (N.D. Ill. 1997) (finding this factor favored defendants although plaintiffs and some class members lived in Illinois).

> E.      *Access to Sources of Proof*

This next private factor concerns the parties' relative ease of access to evidence. Plaintiffs do not dispute that documents concerning Dollar Tree's nationwide compensation policies and practices, as well as payroll records, are stored at the corporate office in Chesapeake.  (Resp. at 6; *see* Mot. to Transfer, Ex. B, David McDearmon Decl. ¶¶ 5–10.)  As discussed earlier, Virginia is far more convenient for Dollar Tree's anticipated corporate witnesses as well.

Nonetheless, this factor is neutral.  Potential witnesses, beyond the present parties, are spread around the country and must travel to either Chicago or Norfolk.  And while Dollar Tree asserts that the relevant evidence stored at the corporate office is voluminous and would be burdensome to produce at trial, (Mem. at 12), "documents and records are easily transportable . . . and their location is not a persuasive reason for transfer."  *Simonoff*, 2010 WL 1195855, at *2 (citing *Morton Grove Pharm.,* 525 F. Supp. 2d at 1045–46).

## II.     Interest of Justice (or Public) Factors

Turning to the interest of justice factors, our analysis looks to "the efficient functioning of the courts, not to the merits of the underlying dispute."  *Coffey*, 796 F.2d at 221.  We consider the "court's familiarity with the applicable law, the speed at which the case will proceed to trial,

and the desirability of resolving controversies in their locale." *First Nat'l Bank*, 447 F. Supp. 2d

at 912 (citations omitted).

### A.       *Familiarity with Applicable Law*

In this case, each court's relative familiarity with applicable law does not weigh for or

against transfer.  Plaintiffs' claims under the FLSA involved federal questions and principles

familiar to all district court judges.  Plaintiffs' state claims involve the wage and hour laws of

dozens of states, including Illinois and Virginia, such that any judge presiding over this matter

faces the same learning curve.  Judges in either district are equally competent to preside over

these questions and, thus, this factor is a wash.

### B.       *Speedy Case Resolution*

According to recent Federal Court Management Statistics for both courts, available at

http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx, in 2011, the median

times from filing to trial in civil cases were 28.4 months in the Northern District of Illinois and

12.8 months in the Eastern District of Virginia.  Civil cases reach disposition in Illinois in 6.6

months compared to 5.1 months in Virginia.  These statistics show that cases proceed to trial

significantly faster in the Eastern District of Virginia, although the times for disposition

generally are comparable.  In light of the speed to trial in Virginia, however, this factor slightly

favors transfer.  We also conclude that transfer would further judicial economy and efficiency,

and ensure consistent treatment of the nationwide class and collective claims asserted in this

case, which are similar to those plead in cases already pending in the Eastern District of Virginia.

 (*See* Mem. at 2 n.2; Suppl. Auth. at 1 & Ex. A (5/10/12 Op. in *Smith v. Dollar Tree Stores,*

*Inc.*).)

C.  *Relationship of Communities to Litigation and Desirability of Resolving Case in Each Locale*

"Resolving litigated controversies in their locale is a desirable goal of federal courts." *First Nat'l Bank*, 447 F. Supp. 2d at 914.  Dollar Tree contends that Virginia has a greater interest in this case than Illinois because it is based in Virginia and the policies in dispute were enacted there.  Plaintiffs do not address this issue in their opposition.  Because Dollar Tree operates stores nationwide, we find that, with respect to Plaintiffs' claims, "there is no compelling community interest that would be preserved by the selection of one venue over another." *Jaramillo v. DineEquity, Inc.*, 644 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (finding the relationship of the communities factor to be neutral in a national class action).  All in all, we find that this factor slightly supports transfer.

III.   **Summary of Balance**

After considering all of the relevant factors, we hold that the balance warrants transfer of this case to the Eastern District of Virginia.  Nearly every factor—including the most important factors concerning the situs of materials events and convenience of witnesses—favors transfer.  Importantly, transfer will also promote economy, efficiency, and consistent treatment of Plaintiffs' nationwide claims.  All in all, the balance of the factors here collectively and resoundingly outweighs Plaintiffs' choice of forum in this nationwide class and collective action.

**CONCLUSION**

For the reasons stated above, this case is hereby transferred to the Eastern District of Virginia.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: June 18, 2012