IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

MAR − 7 2014

CLERK, US DISTRICT COURT
NORFOLK, VA

MARINA LaFLEUR, ET AL.

    Plaintiffs,

    v.

DOLLAR TREE STORES, INC.

    Defendant.

CIVIL ACTION NO.: 2:12-cv-00363

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Dollar Tree Stores, Inc.'s ("Defendant" or "Dollar Tree") Motion to Decertify the Collective Action. Defendant filed its Motion to Decertify (ECF No. 405) on September 13, 2013 and its Corrected Memorandum in Support of the Motion (ECF No. 407) on September 16, 2013. Plaintiff Theresa Croy, individually and on behalf of other opt-in plaintiffs ("Plaintiffs"), filed a Response in Opposition to Defendant's Motion to Decertify (ECF No. 415) on September 24, 2013. Defendant then filed its Reply (ECF No. 420) supporting decertification on September 30, 2013. The matter having been fully briefed and oral argument having been heard, this matter is now ripe for disposition. For the reasons stated herein, Defendant's Motion to Decertify is **DENIED**. Plaintiffs' Motion to Order a Settlement Conference (ECF No. 423) is **GRANTED**.

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs are current and former Dollar Tree hourly sales associates. Dollar Tree is a publicly-traded corporation headquartered in Chesapeake, Virginia with retail stores in the

1

continental United States. Compl. ¶¶ 13-17. Dollar Tree stores are corporately-owned and operated with operating policies and procedures that apply to all stores. Compl. ¶¶ 16, 19.

Plaintiffs Marina LaFleur and Theresa Croy brought their claims against Dollar Tree on behalf of themselves and all current and former "Hourly Associates" and "Assistant Store Managers." Compl. ¶ 1. Plaintiffs claim that Defendant violated wage laws in forty-eight states and the District of Columbia by engaging in practices that required or permitted employees to work "off-the-clock" and overtime without compensation. Compl. ¶ 2. Plaintiffs allege that these "standard and uniform human resource and employment policies and practices, including policies and practices governing wages and compensation," applied to all Dollar Tree employees nationwide and facilitated a company-wide procedure of allowing employees to perform overtime work without pay. Compl. ¶ 20. These allegations specifically claim that putative class members are paid on an hourly basis and are required to work off-the-clock (1) when making bank deposits, (2) during interrupted meal periods, and (3) at miscellaneous other times performing activities such as unloading trucks, stocking inventory and aisles, retrieving carts and boxes, cleaning, and waiting for other employees to start the next shift. Compl. ¶¶ 21, 24-34; Def.'s Supp. Mot. to Decertify 22. As a result of the practice of allowing unpaid off-the-clock work, Plaintiffs worked outside of their scheduled work period and Defendant failed to compensate them for associated overtime. Accordingly, Plaintiffs claim Defendant violated federal and state laws prohibiting unpaid overtime and payment of wages below the minimum wage. Compl. ¶¶ 24, 35, 37-38, 43-44, 53.

Plaintiffs LaFleur and Croy filed their Complaint in this case on November 28, 2011 before the United States District Court for the Northern District of Illinois. Compl. (ECF No. 1). The Complaint articulates the aforementioned allegations and brought causes of action for

2

alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, and similar state wage and hour laws applicable to putative class members. Compl. ¶ 2.  On June 18, 2012, United States District Judge Marvin E. Aspen issued a memorandum opinion and order directing the case to be transferred to the Eastern District of Virginia. Mem. Op. Order 1, June 18, 2012 (ECF No. 58).

On October 2, 2012, this Court conditionally certified the case, allowing Plaintiffs to send notice to potential opt-in plaintiffs. Mem. Op. Order, Oct. 2, 2012 (ECF No. 82).  This Court also dismissed state law claims and pendant claims for Plaintiffs who worked solely as Assistant Store Managers, including named plaintiff LaFleur. *Id.* On November 13, 2012, the Court approved the parties' proposed joint discovery plan.  Subsequently, Plaintiffs sent notices to approximately 275,000 former and current Dollar Tree employees, 6,276 of which opted-in as plaintiffs in the lawsuit. Def.'s Supp. Mot. 6.  At the time the Motion to Decertify was filed, out of 6,276 opt-in plaintiffs, 184 opt-in plaintiffs had been dismissed, leaving 6,092 Plaintiffs. *Id.*

On January 3, 2014, the Court granted Plaintiffs leave to amend their Complaint to add Dee Crouch and Kimberly Cruz as named plaintiffs in this action. Mem. Op. Order, Jan. 3, 2014 (ECF No. 433).  The Court also dismissed opt-in plaintiffs whose claims were time-barred pursuant to the applicable statute of limitations, who filed bankruptcy claims without acknowledging claims against Dollar Tree and who failed to respond to Defendant's written discovery requests. *Id.* Lastly, the Court deferred disposition of the Motion to Decertify until after the parties were able to present oral arguments. *Id.* The Court conducted a hearing on the issue of decertification on February 26, 2014.  At the time of the hearing, Defense counsel

represented to the Court that approximately 4,000 individuals remained as opt-in plaintiffs of the conditionally certified class.

## II. LEGAL STANDARD

The FLSA, enacted in 1938, "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." *Houston et. al. v. URS Corp. et al.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). Pursuant to Section 216(b) of the FLSA, an action may be maintained against an employer in federal court "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The collective action mechanism allows for the efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims of misconduct by their employers. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

District courts within the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA:

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.

*Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The second phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and the court undertakes a more "stringent" factual determination as to whether members of the collective class are, in fact, similarly situated. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D. N.C.

4

2011) (citing *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). If, after discovery, it is apparent that plaintiffs are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. *Romero*, 796 F. Supp. 2d at 706.

The FLSA does not define "similarly situated" and the Fourth Circuit has yet to apply a standard for determining when plaintiffs are similarly situated in the context of a FLSA collective action. *Choimol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). However, courts have determined if potential class members are similarly situated by assessing the existence of "issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Houston*, 591 F. Supp. 2d at 831. The situations need not be identical. The court explained the standard as follows:

> That is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member. Rather, the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members.

*Id.* Insubstantial differences in job duties, hours worked and wages due that do not materially affect whether a group of employees may be properly classified are not significant to the "similarly situated" determination. *See Romero*, 796 F. Supp. 2d at 705 (citing *de Luna-Guerrero v. N.C. Grower's Assoc.*, 338 F. Supp. 2d 649, 654 (E.D. N.C. 2004)). In considering a motion to decertify alleging dissimilarity of the conditionally certified class, "[d]istrict courts have typically applied three factors to aid in this determination: (1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to

each plaintiff; and (3) fairness and procedural considerations." *Sharer v. Tandberg, Inc.*, 1:06CV626 (JCC), 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007).

Plaintiffs bear the burden of showing by a preponderance of the evidence that their claims are "similarly situated." *Hipp*, 252 F.3d at 1217; *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012). "Upon a determination that the plaintiffs establish the burden of proving they are 'similarly situated[,]' the collective action proceeds to trial." *Houston*, 591 F. Supp. 2d. at 832. By contrast, "if the court determines that the plaintiffs are in fact, not 'similarly situated[,]' the class is decertified and the original plaintiffs proceed on their individual claims." *Id.*

### III. DISCUSSION

Defendant filed a Motion to Decertify the conditionally certified collective action in this case and to dismiss all opt-in plaintiffs, arguing that Plaintiffs have not demonstrated that class members are similarly situated with respect to any of the claims raised in this collective action. Defendant contends that phase I of discovery has established that Dollar Tree does not have an illegal policy allowing off-the-clock work in its stores. Instead, the corporation's written policies prohibit off-the-clock work. Defendant also contends that there is neither common experiences with respect to off-the-clock work performed by the opt-in plaintiffs nor common proof of the nature, frequency or duration of overtime work and damages. Defendant further contends that the factors unique to each plaintiff's claim of working off-the-clock during bank runs, meal periods or other miscellaneous times as well as claims alleging minimum wage violations require personalized and local evidence to adjudicate.

Plaintiffs counter that discovery thus far has identified substantially similar representative testimony from opt-in plaintiffs in twenty-three different states and forty-eight different districts,

6

testimony which demonstrates that off-the-clock work had been performed as a result of Dollar

Tree's national practices pertaining to labor budgeting, timekeeping and monitoring. Plaintiffs

argue that conditionally certified class members are similarly situated because they were all

subject to Dollar Tree's permission of unpaid overtime work and failure to enforce compliance

with the FLSA. Specifically, Plaintiffs assert the class members were subject to the following:

> (1) Corporate labor budgets that are set at the corporate level and implemented at
> the store level; (2) Corporate requirements to get specific duties done every day
> and every week while staying within the strict and specific labor budgets for each
> store and each employee (Corporate policy that when implemented at the store
> level does not provide sufficient sales associate hours per store); (3) The uniform
> timekeeping system and reporting requirements dictated by Dollar Tree's
> corporate office did not allow employees to adequately report time; (4)
> Inadequate and non-existing policies and practices for employees to record and
> report their time working off the clock; and (5) Failure to monitor and investigate
> systemic violations of off-the-clock work.

Pls.' Opp'n. to Mot. to Decertify 2.

To analyze whether the Court should decertify the collective action, the Court will first

consider the disparate factual and employment settings of the opt-in plaintiffs. *See Sharer*, 2007

WL 676220, at *2. Then, the Court will examine the defenses available to Defendant that appear

to be individual to each plaintiff. *Id.* Lastly, the Court will review fairness and procedural

considerations. *Id.* While Defendant moved for decertification, Plaintiffs bear the burden of

proof to establish that the opt-in plaintiffs are similarly situated as a result of their similar

employment relationships, factual circumstances and legal claims.

### A. Similar Factual and Employment Settings Factor

The first factor to be considered requires both an analysis of plaintiffs' job duties,

geographic location, supervision, and salary as well as plaintiffs' evidence of a Dollar Tree

policy that violates the FLSA. *Rawls*, 244 F.R.D. at 300; *see also Marroquin v. Canales*, 236

F.R.D. 257, 260 (D. Md. 2006) ("A group of potential plaintiffs are 'similarly situated' when

they together were victims of a common policy or scheme or plan that violated the law.").

Plaintiffs submit evidence that opt-in plaintiffs' job duties, supervision and salary are sufficiently

similar. Plaintiffs have provided additional evidence of a nationwide corporate practice that

allegedly violates the FLSA, and has been applied to all opt-in plaintiffs in a similar manner.

*See, e.g., Rawls*, 244 F.R.D. at 300 ("Here, although Plaintiffs were employed in different

geographic locations, they were all CNAs who performed similar services and were paid an

hourly wage. Further, undisputed evidence shows that Augustine engaged in a uniform,

company-wide policy of refusing to pay overtime wages to CNAs who worked in excess of forty

hours per week."). The Court finds that the factual and employment settings of the individual

opt-in plaintiffs are sufficiently similar.

 First, members of the conditionally certified class had the same job title, job code,

training, required duties and type of supervision at the time the alleged FLSA violations

occurred. *See* Pls.' Opp'n 9 ("The opt-in Plaintiffs all have the same job code at Dollar Tree, all

are paid hourly and all perform the same duties at every store throughout the country.

Specifically, they stock shelves, unload trucks, make bank deposits, work the cash register,

provide customer service and clean the store. . . . Opt-in Plaintiffs are supervised and trained by

Store Managers and Assistant Store Managers that have the same uniform job descriptions and

who are provided the same uniform and corporate dictated training on how to perform their jobs

and how to train sales associates.") (citations omitted). Plaintiffs do not dispute the presence of

differences in the amount of unpaid wages and timing of overtime work. Rather, they assert that

the challenged uniform practice affects the entire class of "Hourly Associates" similarly, making

collective treatment appropriate notwithstanding any differences.

To rebut Defendant's contention that individualized evidence will be needed to determine whether alleged off-the-clock work occurred and caused opt-in plaintiffs' pay rate to fall below the minimum wage for each week, Plaintiffs establish that inconsistencies in pay rate do not demonstrate a difference in duties, classification or hourly wages of the employees in the collective action, or a difference in the application of a corporate policy to permit or require off-the-clock work. These differences do not affect the "similarly situated" analysis for overtime violations, but becomes important if and when calculations are performed to determine if certain opt-in plaintiffs have an additional claim for minimum wage violations.

To rebut Defendant's argument that class members performed different duties as Dollar Tree employees and some opt-in plaintiffs have been both victims and perpetrators of the alleged FLSA violations, Plaintiffs assert that the opt-in plaintiffs' required work as "Hourly Associates" at the time the FLSA violations occurred made them all similarly situated. All opt-in plaintiffs were "subject to the same corporate budget setting policies and practices that controlled the amount of sales associate hours provided to each store on a weekly basis at the corporate level. . . All sales associates' work time and hours are subject to the same timekeeping policy and COMPASS timekeeping system dictated by Dollar Tree corporate offices." Pls.' Opp'n 10; *see also Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 463 (S.D. N.Y. 2011) ("For their arguments to be pertinent to certification, however, plaintiffs must demonstrate that the 'practices' and 'culture' of which they complain are sufficiently uniform and pervasive as to warrant class treatment."). While actual hours worked and wages due may vary within the collective, district courts in the Fourth Circuit have clarified that "[d]ifferences as to time actually worked, wages actually due and hours involved" do not preclude a finding of a "similarly situated" class. *Romero*, 796 F. Supp. 2d at 705. Defendant has not demonstrated

9

that differences in hours and wages undermine the similarities within the conditionally certified class that otherwise prevail.

Second, Plaintiffs have established the existence of a corporate practice that resulted in alleged FLSA violations, which affected opt-in plaintiffs in a sufficiently similar manner. Notwithstanding Dollar Tree's written policy prohibiting off-the-clock work, Plaintiffs indicate the corporation had an unwritten practice of allowing off-the-clock work, demonstrating that the written prohibition was consistently violated and generally impacted the members of the class in a similar manner. Pls.' Opp'n 11; *but see Zivali*, 784 F. Supp. 2d at 459 ("[P]laintiffs have failed to show that these lawful policies are consistently violated in practice such that it would be possible to generalize across the 4,100 opt-in plaintiffs in this case. To the contrary, the record shows an extremely wide variety of factual and employment settings among the individual plaintiffs, managers, and retail stores"). Opt-in plaintiff Christina Alaniz testified in her deposition that Dollar Tree's timekeeping policies "weren't followed. They weren't practiced. It was pretty much winging the whole hourly thing. It was to the convenience of either the store benefit or the manager's quota for not [*sic*] overtime. So there was a conflict behind all that." Alaniz Deposition at 28:11-16, Pls.' Opp'n Ex. Q (ECF No. 415-19, hereinafter "Ex. Q"). Likewise, opt-in plaintiff Jennifer Ambrosini stated that stores where she worked "did not follow Dollar Tree's policies when it came to the bank deposits," which she observed as an hourly sales associate and promulgated as an assistant manager. She stated, "I wasn't trained to follow [Dollar Tree's policies when it came to bank deposits]" and "I would say that I was being instructed to ignore policies, yes, because I'd get in trouble if I didn't." Ambrosini Deposition at 28:17-19, 57:15, Ex. Q.

The Court recognizes that a combination of practices were used to accomplish unpaid off-the-clock work, including corporate control of local labor budgets and recording within the COMPASS timekeeping system. Although the corporate office constructed each stores' labor budgets, Defendant attempts to avoid liability by asserting that labor hours and projected sales were set in part by local store managers and district managers' inputs. Def.'s Reply to Mot. to Decertify 7-8. However, Plaintiffs claim that the national corporation created labor budgets with the intent to "increase[] productivity and continue[] efficiencies" without ensuring that the labor budget was adhered to in a lawful manner. Pls.' Opp'n 13. Plaintiffs suggest that the corporate labor budgets constrained the number of hours employees could be paid for working at local stores, leading to the necessity for unpaid off-the-clock work. Plaintiffs present evidence that "[s]tore managers cannot increase the store labor budget on their own, those changes must be made from Dollar Tree's corporate office." Pls.' Opp'n 14. These tight labor budgets were entrusted to local management to be implemented according to a national procedure of delegating sales associate hours allocations to managers without monitoring for FLSA violations. While Defendant acknowledges that opt-in plaintiffs' situations were impacted by "local procedures, local management, and Plaintiffs' personal choices," Defendant does not mention any attempt to constrain local and personal decision-making to ensure compliance with labor laws. Def.'s Supp. Mot. 2. Also, these tight labor budgets may have compelled local management to encourage uncompensated overtime work or avoid recording post-shift or meal break work. Deposed plaintiffs testified that the hours budgeted for the work required was insufficient. Opt-in plaintiff Patricia Alcanter testified about labor budgeting:

> QUESTION: And when you say that they changed your time, explain to me what exactly it was that they did.

11

> ALCANTER: Well, from what I understand, when Dollar Tree industry cuts back hours, they designate hours to each store, and I'm pretty sure it's based on the performance or the sales. And when they cut back the hours, the managers wouldn't be able to get the freight out like they are supposed to, so the DM gave them permission to have anyone that wanted to stay and work. They could stay and work, because the freight was the most important thing that the DM was concerned about.

Alcanter Deposition at 30:18-31:4, Ex. Q.  Opt-in plaintiff Susan Alexander stated, "[t]here was never enough time in a week to pack out everything that came into the store." Alexander Deposition at 82:18-19, Ex. Q.

The COMPASS timekeeping system was used to facilitate unpaid off-the-clock work through disallowance of the recording of certain overtime work.  Plaintiffs allege that all opt-in plaintiffs were subject to Dollar Tree's COMPASS timekeeping system that "automatically locks sales associates out of the time keeping system [during breaks] and will not allow them to clock back in before the 30 minutes has expired, even when they are required by a manager to work during their meal break." Pls.' Opp'n 15. Plaintiffs also allege that the "Hourly Associates" could not review or adjust actual hours worked in the COMPASS system themselves because the system only displayed the time they were scheduled to work.  Opt-in plaintiff Lori Stephens testified:

> QUESTION: So when you were on this Compass system adjusting the clock in time or the break time for your cashier –
>
> STEPHENS: Correct.
>
> QUESTION: – did it not show their closing time as well?
>
> STEPHENS: It did, but you could not put the time in there.
>
> QUESTION: Okay. So you could see it, you just couldn't -- Mark had forbidden you from editing it?
>
> STEPHENS: I could see what she was scheduled and what I was scheduled.

QUESTION: And did it also show -- it showed what was scheduled. Did it also show the times that they had actually recorded?

STEPHENS: No.

Stephens Deposition at 46:2-18, Ex. Q. Because the system locked employees out during break periods, managers were required to record overtime work on written Time Clock Worksheets in order for the employee to be paid for additional time. However, Plaintiffs provide testimony that managers did not complete Time Clock Worksheets consistently. Ambrosini testified that the Time Clock Worksheets were not used to record time spent taking deposits to the bank:

QUESTION: Did you ever fill out a time clock worksheet?

AMBROSINI: For going to the bank? Absolutely not.

QUESTION: And why not?

AMBROSINI: Because it wasn't allowed. I mean . . .

QUESTION: Not allowed by?

AMBROSINI: Larry knew Newberry or Christine, they said it was unpaid what we had to do at the end of our shift.

Ambrosini Deposition at 56:13-19, Ex. Q. These allegations support the existence of inadequately structured labor budgets, a practice of constraining the amount of work recorded and a failure to follow a uniform procedure for recording overtime to ensure proper compensation as required by the FLSA.

Third, Plaintiffs have shown that certain opt-in plaintiffs will be able to offer representative testimony about Dollar Tree's policies and practices. Testimony of a representative sampling of plaintiffs in a collective action is a procedure often used in FLSA actions. *See Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 68 (2d Cir. 1997) ("[D]epending on the nature of the facts to be proved, a very small sample of representational

13

evidence can suffice"); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991) ("[T]he adequacy of the representative testimony necessarily will be determined in light of the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony.").

Plaintiffs highlight representative testimony of a pervasive corporate practice of permitting and requiring off-the-clock work from opt-in plaintiffs around the country. Pls.' Opp'n Ex. D (ECF No. 415-6). There is also representative testimony available regarding unpaid work during lunch periods and at the end of shifts as well as the unwritten practice of disregarding written timekeeping policies. *See* Pls.' Opp'n Exs. A, B, C and E (ECF Nos. 415-3, 415-4, 415-5, and 415-7). Defendant asserts that there is no representative testimony to be offered because the circumstances surrounding specific occurrences of alleged off-the-clock work vary vastly among opt-in plaintiffs. However, the Court finds that the existence of varied circumstances leading to off-the-clock work does not undermine the core issue of whether a practice of allowing unpaid off-the-clock work existed in Dollar Trees Stores. Accordingly, factual differences in explanations for unpaid overtime do not preclude a finding that opt-in plaintiffs were similarly situated as subject to a policy to ask or expect "Hourly Associates" to work off-the-clock for the benefit of Dollar Tree without a consistently followed procedure for guaranteeing overtime pay.

Plaintiffs "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions . . ." *De Luna–Guerrero*, 338 F. Supp. 2d at 654 (citations omitted). Among conditionally certified class members, there are common questions of law, factual issues and relief sought. Therefore, the Court finds the factual and

14

employment settings factor of the decertification analysis weighs in favor of Plaintiffs and the members of the putative class are similarly situated for purposes of certification.

## B. Individualized Defense Factor

The individualized defenses factor favors certification. Upon examination of the potential defenses available, Defendant will be able to present defenses that relate to the class as a whole, and the presence of individual defenses will not make the collective action unmanageable. Plaintiffs have demonstrated that representative testimony will adequately present the claims of all opt-in plaintiffs and will allow Defendant "to dispute allegations made by claimants or to raise substantive defenses." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 266 (3d Cir. 2011). Furthermore, even on the issue of damages, matters that differentiate plaintiffs by when and how they performed off-the-clock work can be established by representative testimony as opposed to individualized evidence. *See Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965 (S.D. Ohio 2010) (holding that when considering whether representative testimony is proper to prove damages in a collective action seeking unpaid wages under the FLSA, the focus is on the court's ability to reasonably conclude that there was sufficient evidence to show the amount and extent of uncompensated work as a matter of just and reasonable inference).

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls*, 244 F.R.D. at 300. Defendant argues it must present individualized evidence to assert a de minimis defense, no notice defense, good faith defense and no willfulness defense. Defendant maintains that its defenses require it to undermine each plaintiff's individual claim as to whether

15

his or her missed compensation was significant, he or she reported non-payment for overtime work, or the off-the-clock work was performed as a result of personal choice.

Defendant has not shown that these defenses require "'substantial individualized determinations' that would not lead to efficient adjudication." *Gionfriddo v. Jason Zink, LLC,* 769 F. Supp. 2d 880, 887-88 (D. Md. 2011) (quoting *Purdham v. Fairfax County Pub. Sch.,* 629 F. Supp. 2d 544, 549 (E.D. Va. 2009)). Similarities among opt-in plaintiffs' claims provide Defendant with the opportunity to present broad-based defenses to the allegations in this action, which will not require proof of individualized facts at trial. As for allegations of overtime violations, all opt-in plaintiffs' claims rest on common questions of law and similar facts regarding off-the-clock work. Additional minimum wage violation claims rest upon the same common questions of law because minimum wage violations occurred when overtime work was unpaid, resulting in wages falling below the minimum hourly wage. Also, all claims point to "substantial evidence of a single decision, policy, or plan" that affected all opt-in plaintiffs in the same way. *Andrako v. U.S. Steel Corp.,* 788 F. Supp. 2d 372, 378 (W.D. Pa. 2011). The defenses Defendant expects to assert may be employed to attack the collective claims as a whole by arguing that Dollar Tree operated with good faith, never received reports of non-compensation for overtime or did not approve of employees' personal decisions to engage in off-the-clock work. Additionally, "[t]here are means to aid in making individualized fact determinations such as bifurcation for liability and damages, designating subclasses, and appointment of a special master." *Chabrier v. Wilmington Fin., Inc.,* 2008 WL 938872, at *3 (E.D. Pa. Apr. 4, 2008). Depositions, affidavits and representative sampling may also be used to estimate hours worked on-the-clock and off-the clock as well as evaluate the prevalence of common practices and occurrences to establish certain defenses.

16

Defendant also argues that it will need to elicit testimony from individual plaintiffs regarding the quantity and timing of off-the-clock work and pay rate. However, this testimony goes to issues of proof concerning days and hours which each individual plaintiff reported working, issues important for a damages determination in an overtime violation cause of action. This testimony does not concern the corporation's liability to employees as a certified class. A collective action does not necessitate that "there be no differences among class members," nor does it prohibit individualized inquiry "in connection with fashioning the specific relief or damages to be awarded to each class member." *Houston*, 591 F. Supp. 2d at 832. The court in *Epps v. Arise Scaffolding & Equip., Inc.*, a similar case where plaintiffs argued that their employer's policies rendered required time spent reporting early, loading company vans and riding to job sites together as a crew compensable under the FLSA, held:

> The existence of these individual deductions, however, does not affect the underlying claim that all plaintiffs were subject to a single policy that required that they report early and engage in other activity directed by their employer for which they have not received compensation. There is no claim, by either TSI or Waco, that individual plaintiffs, or groups of plaintiffs, were subject to different policies or procedures which would affect the ability of the Court to resolve Erectors' claim collectively.

2:10CV189, 2011 WL 1566004 (E.D. Va. Feb. 17, 2011) *report and recommendation adopted*, 2:10CV189, 2011 WL 1566001 (E.D. Va. Apr. 22, 2011). Testimony regarding dates, hours and pay rate does not affect certification of the collective action or impact the determination of whether Dollar Tree's practices violate the FLSA and were imposed upon opt-in plaintiffs similarly. This evidence may be used to rebut damages claims. Therefore, the individualized defense factor of the decertification analysis weighs in favor of Plaintiffs and supports this Court's finding that certified class treatment of Plaintiffs' claims is appropriate.

## C. Fairness and Procedural Considerations Factor

In terms of fairness and procedural considerations:

> [T]he Court considers the primary objectives of allowance of a collective action under § 216(b), namely "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000). The Court also must "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.*

*Rawls*, 244 F.R.D. at 302. The fairness and procedural considerations factor supports Plaintiffs. Defendant contends that if this action is not decertified, it will need to prepare for more than 4,000 mini-trials of each plaintiff because their claims are vastly different. However, the members of the collective share a common issue: whether Defendant required or permitted them to work off-the-clock without compensation. Each individual plaintiff would be unlikely to pursue his or her claim alone due to the costs involved relative to the damages sought. *Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 823 (N.D. Ill. 2010) ("Because of the modest amounts likely involved, many of the plaintiffs would be unable to afford the costs of pursuing their claims individually."). Certification would significantly reduce the costs of litigation to members of the class. Moreover, "it is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can be easily created." *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984). The fairness and procedural considerations factor weighs against the Defendant and supports preclusion of the relief sought in the instant Motion to Decertify.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Decertify the FLSA collective action class is **DENIED**. The Court **ORDERS** this case to proceed as a collective action as conditionally certified, subject to the modifications in class membership previously ordered by

18

the Court. Noting that neither party addressed the creation of subclasses in their pleadings, the Court **ORDERS** the parties to submit within ten (10) days of the entry of this Order any further argument as to subclasses. All responsive and reply pleadings to any submission under this invitation are to be filed within five (5) days of receipt.

In its January 3, 2014 Order, the Court deferred ruling on Plaintiffs' Motion to Order a Settlement Conference. The Court finds that the parties are now capable of attending a settlement conference to seriously and efficiently discuss settling the case. Accordingly, Plaintiffs' Motion to Order a Settlement Conference is **GRANTED**. It is **FURTHER ORDERED** that the parties contact the Magistrate Judge assigned to this case to schedule a settlement conference within ten (10) days of the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
March 7 , 2014

Raymond A. Jackson
United States District Judge