IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARINA LaFLEUR, and
THERESA CROY, individually and
on behalf of others similarly situated,

        Plaintiffs,

v.                                     CIVIL ACTION NO. 2:12cv363

DOLLAR TREE STORES, INC.,
d/b/a DOLLAR TREE, and d/ba/ DEALS,

        Defendant.

### AMENDED MEMORANDUM OPINION & ORDER

This matter comes before the Court on a third Joint Motion for Approval of Settlement brought by Plaintiffs Theresa Croy, Kimberly Cruz, and Dee Crouch, on behalf of themselves and the 4,209 opt-in Plaintiffs in the collective group they represent ("Plaintiffs"), and Defendant Dollar Tree Stores, Inc., d/b/a Dollar Tree, and d/b/a Deals ("Dollar Tree"), collectively, the "Parties." ECF No. 564. Plaintiffs have also filed a third Unopposed Petition for Approval of Attorneys' Fees and Expenses. ECF No. 566.

On July 23, 2015, the Court held a settlement fairness hearing, and for the reasons stated in open court, which are set forth more fully in a Memorandum Opinion dated July 31, 2015, the Joint Motion for Approval of Settlement and Plaintiffs' Unopposed Petition for Approval of Attorneys' Fees and Expenses were both denied. The Court found the record bereft of data or expert support to establish the settlement fund of $300,000 was fair and inadequate documentation to justify counsel fees of $1,900,000, which the Court deemed excessive. Given that the Parties stated they wished to continue settlement discussions in light of the Court's

concerns, the Court permitted the Parties to supplement their filing within ten days of the date of the hearing.

Upon review of the Parties' supplemental filing, the Court again considered the Joint Motion for Approval of Settlement, which it again denied in a Memorandum Opinion and Order dated October 21, 2015. The Court still found the explanation for the calculations of the settlement fund amount inadequate to find it fair and reasonable. The Court also found that there was still inadequate documentation to support $1,900,000 in attorneys' fees.

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs are current and former Dollar Tree hourly sales associates. Dollar Tree is a publicly-traded corporation headquartered in Chesapeake, Virginia with retail stores in the continental United States. Pls.' Compl. ¶¶ 13-17, ECF No. 1. Dollar Tree stores are corporately-owned and operated with operating policies and procedures that apply to all stores. *Id.* at ¶¶ 16, 19.

Plaintiffs Marina LaFleur and Theresa Croy brought their claims against Dollar Tree on behalf of themselves and all current and former "Hourly Associates" and "Assistant Store Managers." *Id.* at ¶ 1. Plaintiffs claim that Defendant violated wage laws in 48 states and the District of Columbia by engaging in practices that required or permitted employees to work "off-the-clock" and overtime without compensation. *Id.* at ¶ 2. Plaintiffs allege that these "standard and uniform human resource and employment policies and practices, including policies and practices governing wages and compensation," applied to all Dollar Tree employees nationwide and facilitated a company-wide procedure of allowing employees to perform overtime work without pay. *Id.* at ¶ 20. These allegations specifically claim that putative class members are paid on an hourly basis and are required to work off-the-clock (1) when making bank deposits,

(2) during interrupted meal periods, and (3) at miscellaneous other times performing activities such as unloading trucks, stocking inventory and aisles, retrieving carts and boxes, cleaning, and waiting for other employees to start the next shift. *Id.* at ¶¶ 21, 24-34. As a result of the practice of allowing unpaid off-the-clock work, Plaintiffs worked outside of their scheduled work period and Defendant failed to compensate them for associated overtime. *Id.* at ¶ 43. Accordingly, Plaintiffs claim Defendant violated federal and state laws prohibiting unpaid overtime and payment of wages below the minimum wage. *Id.* at ¶ 44.

Plaintiffs LaFleur and Croy filed their Complaint in this case on November 28, 2011 before the United States District Court for the Northern District of Illinois. ECF No. 1. The Complaint articulates the aforementioned allegations and brought causes of action for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, and similar state wage and hour laws applicable to putative class members. *Id.* On June 18, 2012, United States District Judge Marvin E. Aspen issued a memorandum opinion and order directing the case to be transferred to the Eastern District of Virginia. ECF No. 58.

On October 2, 2012, this Court conditionally certified the case, allowing Plaintiffs to send notice to potential opt-in Plaintiffs. ECF No. 82. This Court also dismissed non-Illinois state law claims and pendant claims for Plaintiffs who worked solely as Assistant Store Managers, including named Plaintiff LaFleur. *Id.* On November 13, 2012, the Court approved the Parties' proposed joint discovery plan for Phase I Discovery. ECF No. 109. Subsequently, Plaintiffs sent notices to approximately 275,000 former and current Dollar Tree employees, 6,276 of which

opted-in as Plaintiffs in the lawsuit. Out of 6,276 opt-in Plaintiffs, 184 opt-in Plaintiffs were later dismissed, leaving 6,092 Plaintiffs.

On January 11, 2013, the Court denied Defendant's motion for certification for an interlocutory appeal of its order granting conditional certification, and granted Defendant's motion to dismiss the remaining Illinois state claims. ECF No. 195.

On January 3, 2014, the Court granted Plaintiffs leave to amend their Complaint to add Dee Crouch and Kimberly Cruz as named Plaintiffs in this action. ECF No. 433. The Court also dismissed opt-in Plaintiffs whose claims were time-barred pursuant to the applicable statute of limitations, who filed bankruptcy claims without acknowledging claims against Dollar Tree, and who failed to respond to Defendant's written discovery requests. *Id.* On March 7, 2014, the Court denied Defendant's Motion to Decertify. ECF No. 446. At the hearing on decertification, Defense counsel represented to the Court that approximately 4,000 individuals remained as opt-in Plaintiffs of the conditionally certified class. On April 4, 2014, Defendant filed two motions – a Motion for Reconsideration of this Court's March 7, 2014 Order and a Motion for Interlocutory Appeal and to Stay Order Denying Decertification. ECF Nos. 454, 456. On May 20, 2014, this Court denied both motions. ECF Nos. 465, 466.

On March 3, 2015, a hearing was to be held on two motions[1] pertaining to Phase II Discovery. That morning, the Court cancelled the hearing upon written notification from each Party that a settlement had been reached. Because the Parties have reached a settlement agreement, the Court has reserved judgment on these and all pending motions.

On May 19, 2015, the Court held a telephone conference with the Parties. After giving the Parties guidance on the appropriate notice to be sent to the opt-in Plaintiffs, the Court

---

[1] These motions were Defendant's Motion to Set the Scope of Phase II Discovery (ECF No. 471) and Plaintiffs' Motion for Scheduling Conference and Order on Phase II Discovery (ECF No. 473).

indicated its reservations regarding the decertification clause and stated that the Parties would have to explain the reasons for its inclusion in the proposed Settlement Agreement at the fairness hearing. In response, Defendant filed a motion for leave to file a memorandum explaining its position. ECF No. 519. The Court granted the motion. On July 1, 2015, Defendant filed its memorandum. ECF No. 522.

After settlement conferences before a United States Magistrate Judge, the Court held a fairness hearing on July 23, 2015. As indicated above, the Court denied the first Joint Motion for Approval of Settlement and Petition for Approval of Attorneys' Fees and Expenses on July 31, 2015. ECF No. 525. The Court again denied the second Joint Motion for Approval of Settlement and Petition for Approval of Attorneys' Fees and Expenses on October 21, 2015. ECF No. 537.

## II. LEGAL STANDARDS

### A. **Approval of Settlement Fund**

A Fair Labor Standards Act ("FLSA") settlement must be approved by the Department of Labor or a federal district court. *Taylor v. Progress Energy, Inc.,* 415 F.3d 364, 374 (4th Cir. 2005). In determining whether a settlement is "fair, adequate, and reasonable" there is a "'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sep. 28, 2009) (quoting *Camp v. Progressive Corp.,* No. Civ.A. 01-2680, Civ.A. 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). Courts consider a number of factors in evaluating a FLSA settlement agreement, including:

(1) the extent of discovery that has taken place;
(2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
(3) the absence of fraud or collusion in the settlement;

(4) the experience of counsel who have represented the plaintiffs;
(5) the probability of plaintiffs' success on the merits[;] and
[(6)] the amount of the settlement in relation to the potential recovery.

*Id.* at *10 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)); *Patel v. Barot*,

15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (citing *In re Dollar General Stores FLSA Litigation*,

No. 5:09–MD–1500, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011)).

B. **Approval of Attorney Fees**

The touchstone of any award of attorneys' fees and expenses is reasonableness. *SunTrust*

*Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 769 (E.D. Va. 2013) (quoting *E.I.*

*DuPont de Nemours and Co. v. Kolon Indus., Inc.*, Civil Action No. 3:09cv058, 2013 WL

458532, at *2 (E.D. Va. Feb. 6, 2013)). The fee applicant bears the burden of demonstrating the

reasonableness of its fee request, *Kenney v. A Touch of Patience Shared Hous., Inc.*, 779 F.

Supp. 2d 516, 525 (E.D. Va. 2011), and of "providing sufficient detail in [its] records to explain

and support [its] requests for fees and costs." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645

(D. Md. 2012). Indeed, "the party who seeks payment must keep records in sufficient detail that

a neutral judge can make a fair evaluation of the time expended, the nature and need for the

service, and the reasonable fees to be allowed." *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983)

(Burger, C.J., concurring).

To calculate an award of attorney fees the Court must determine a "lodestar fee."

*Brodziak v. Runyon*, 43 F.3d 194, 196 (4th Cir. 1998); *Grissom v. The Miller Corp.*, 549 F.3d

313, 320-21 (4th Cir. 2008). The lodestar fee is calculated by multiplying the number of

reasonable hours expended times a reasonable rate. *Id.* The United States Court of Appeals for

the Fourth Circuit ("the Fourth Circuit") has held that the *Johnson* factors must be applied in

determining the reasonable hours expended and hourly rate. *See Daly v. Hill*, 790 F.2d 1071,

1077 (4th Cir. 1986). These factors include:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Id.* at 1075 n.2 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

1974)).

In addition, district courts "should exclude from [the] initial fee calculation hours that

were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting S.

Rep. No. 94-1011, at 6 (1976)). Further, "[h]ours that are not properly billed to one's client also

are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (quoting

*Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). The Fourth Circuit has held that,

"[a] fee based upon reasonable rates and hours is presumed to be fully compensatory without

producing a windfall." *Daly*, 790 F.2d at 1078.

## III.    DISCUSSION

**A. Settlement Fund**

Pursuant to  29 U.S.C. § 216(b), where an employee brings a private action for unpaid

wages under the Fair Labor Standards Act ("FLSA"), and presents to the district court a

proposed settlement, the district court may enter a stipulated judgment after scrutinizing the

settlement for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999).

On July 23, 2015, this Court conducted a fairness hearing. During the hearing the Court expressed its concern that there was a significant decrease from Plaintiffs' original expert estimated damages calculation of over $1,000,000, and the Parties provided the Court insufficient explanation for the significant decrease in the proposed settlement fund of $300,000 before the Court. On July 31, 2015, the Court issued an Order denying the Joint Motion for Approval of Settlement and Petition for Attorneys' Fees because of its concerns regarding the decertification requirement, the lack of support to indicate fairness of the amount of the settlement fund, the exorbitant amount of attorneys' fees requested, and the lack of injunctive relief. In its October 21, 2015, ruling on the Motion to Reconsider the Joint Motion for Approval of the Settlement the Court again questioned the fairness of the settlement fund, reasonableness of attorney fees, and inclusion of a decertification clause.

In this third Joint Motion for Approval of Settlement, the Parties have now provided the Court an adequate explanation for the method used to determine the size of the settlement fund. The Parties explained that during the course of litigation spanning over four years, expert calculations have changed to reflect actual data for the decreased number of Plaintiffs and claims, whereas initial estimates from the complaint and other experts did not rely on actual data. The Parties also increased the settlement fund from $300,000 to $600,000 to include liquidated damages and removed the clause pertaining to decertification.

A brief discussion of the applicable factors is warranted. With respect to the first and second factors, although not a complex case, this case has been litigated since 2011. However, the Parties only completed phase one of discovery prior to reaching a settlement agreement.

With respect to the third factor, there is no indication of fraud or collusion in the settlement. In regards to the fourth factor, Plaintiffs are represented by several law firms whose attorneys are competent and experienced. Fifth, Plaintiffs' counsel assert that based on the evidence, including expert reports, even if successful, Plaintiffs' recovery would be minimal due to low wages for only one to two uncompensated hours per week over short durations of employment. Mem. in Supp. M. to Approve Settlement 10, ECF 505. Lastly, Plaintiffs initially claimed over $5,000,000 in damages. However, they now indicate that their initial calculations were incorrect and current accurate calculations reflect $300,000 as their potential recovery. Therefore, the Court finds the gross Settlement Fund of $600,000 for a collective of 4,209 Plaintiffs fair and reasonable. Accordingly, settlement of Plaintiffs' claim for unpaid overtime wages under 29 U.S.C. § 201 et. seq. is **APPROVED.**

## B.  Attorneys' Fees

Although the Court has concluded that the Settlement Fund is both fair and reasonable, the Court cannot reach the same conclusion about the $1,575,000 attorneys' fee request. The Court has given Plaintiffs' counsel ample opportunity to clearly demonstrate that their attorneys' fees are reasonable. Plaintiffs' counsel initially requested $1,900,000 in attorneys' fees. The Court has twice directed Plaintiffs to submit documentation to support these fees. Plaintiffs' counsel have reduced their fee request to $1,575,000 and submitted billing statements from each firm involved.

A proper fee award is determined by calculating a "lodestar fee." *Brodziak v. Runyon*, 43 F.3d 194, 196 (4th Cir. 1998). The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate. *Id.* In determining reasonable attorneys' fees, the Court must also apply the twelve factors set forth in *Johnson*. *Barber v. Kimbrell's Inc.*,

577 F.2d 216, 266 (4th Cir. 1978) (adopting the twelve factor test used in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  The Fourth Circuit has held, "to the extent that any of these [*Johnson*] factors already ha[ve] been incorporated into the lodestar analysis, we do not consider that factor a second time."  *E. Associated Coal Corp. v. Dir., OWCP,* 724 F.3d 561, 570 (4th Cir. 2013) (citing *Perdue v. Kenny A.,* 130 S. Ct. 1662, 1673 (2010)).  The Fourth Circuit has also recognized that the "district court is under no obligation to go through the inquiry of those [*Johnson*] factors that do not fit."  *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 376 (4th Cir. 1996).  Therefore, the Court need not address each *Johnson* factor.

After calculating the lodestar and applying the *Johnson* factors, the Court should subtract fees for unsuccessful claims and award a percentage based on the result achieved for the plaintiff.  *Grissom v. The Miller Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (citing *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)).  Further, the Supreme Court has noted that "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith," in assessing reasonable attorneys' fees, "the most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); see also *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 244 (4th Cir. 2010) (citing this concept in *Hensley* in approving the district court's reduction of attorneys' fees because of the "'modest value' of the successful claims").

As stated in its Memorandum Opinion of July 31, 2015, in the Court's experience, the amount of attorneys' fees is typically derived from the settlement amount, and generally within the range of 20 to 30%.  In this case, however, Plaintiffs' counsel reached a separate, unopposed agreement that Plaintiffs' counsel receive $1,575,000 in attorneys' fees, more than double the settlement amount.

### 1. Reasonableness of the Rate

The Court will begin its analysis with consideration of the reasonableness of Plaintiffs'

hourly rate which is ascertainable. The third, fifth, sixth, and ninth *Johnson* factors concern the

reasonable rate. These factors include the skill required, the customary fee, whether the fee is

fixed or contingent, and the experience, reputation, and ability of the attorneys. *Daly v. Hill*, 790

F.2d 1071, 1075 n.2 (4th Cir. 1986). The Supreme Court has held that in general any required

special skill or experience is "reflected in the reasonableness of the hourly rates." *Blum v.*

*Stevenson*, 465 U.S. 886, 898 (1984). The reasonable rate is "to be calculated according to the

prevailing market rates in the relevant community." *Id.* at 895. However, in circumstances

where it is appropriate to retain counsel from other communities, "the rates in those communities

may also be considered." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir.

1994). Such rates may be considered when the complexity and specialized nature of the case

necessitates choosing an attorney outside of the community, and when the party choosing the

attorney acted reasonably in making that choice. *Id.* at 179.

In their latest Motion to Approve Attorney Fees and Expenses, counsel submitted the

hourly rates shown in the chart below but indicated in their motion that they charged a reduced

rate. Counsel aver that they have charged a reduced rate at .4868% of the Eastern District of

Virginia rate by requesting only $1,575,000 of the $3,234,986.49 in attorneys' fees they have

billed ($3,234,986.49 divided by $1,575,000). Pls.' Second Unopposed Pet. for Approval of

Att'y Fees and Expenses and Incorporated Mem. 15, ECF No. 566; Ex. F, ECF No. 566-2.

| TIMEKEEPER | HOURS | STANDARD HOURLY RATE | AMOUNT | E.D. VA. RATE | AMOUNT | FURTHER SETTLEMENT REDUCED RATE (.4868)* |
|---|---|---|---|---|---|---|
| **WIGGINS CHILDS PANTAZIS FISHER** | | | | | | |
| D.G. Pantazis Jr. | 1732.20 | 350.00 | 606,270.00 | 295.00 | 510,999.00 | 143.606 |
| Patrick Evans | 450.15 | 250.00 | 112,537.50 | 200.00 | 90,030.00 | 97.36 |
| Josh Wilson | 756.75 | 400.00 | 302,700.00 | 325.00 | 245,943.75 | 158.21 |
| Jennifer W. Smith | 23.10 | 400.00 | 9,240.00 | 325.00 | 7,507.50 | 158.21 |
| Lacey K. Danley | 1980.21 | 250.00 | 495,052.50 | 200.00 | 396,042.00 | 97.36 |
| Patrick Pantazis | 380.50 | 250.00 | 95,125.00 | 200.00 | 76,100.00 | 97.36 |
| Christine Malmat | 73.00 | 125.00 | 9,125.00 | 75.00 | 5,475.00 | 36.51 |
| Ellie C Chavez | 26.65 | 125.00 | 3,331.25 | 75.00 | 1,998.75 | 36.51 |
| Michael Marable | 144.25 | 125.00 | 18,031.25 | 75.00 | 10,818.75 | 36.51 |
| Richard Sarrell | 94.50 | 125.00 | 11,812.50 | 75.00 | 7,087.50 | 36.51 |
| Riley Wolfe | 119.00 | 125.00 | 14,875.00 | 75.00 | 8,925.00 | 36.51 |
| Cynthia Clayton | 4.40 | 125.00 | 550.00 | 75.00 | 330.00 | 36.51 |
| Evelyn Hernandez | 364.75 | 125.00 | 45,593.75 | 75.00 | 27,356.25 | 36.51 |
| Margarita Sosa | 933.28 | 125.00 | 116,660.00 | 75.00 | 69,996.00 | 36.51 |
| Scott B Greer | 657.50 | 125.00 | 82,187.50 | 75.00 | 49,312.50 | 36.51 |
| Dennis G. Pantazis | 226.75 | 600.00 | 136,050.00 | 475.00 | 107,706.25 | 231.23 |
| Tammy B. Todd | 52.20 | 125.00 | 6,525.00 | 75.00 | 3,915.00 | 36.51 |
| Haley Ashworth | 105.45 | 125.00 | 13,181.25 | 75.00 | 7,908.75 | 36.51 |
| Kimberley Sanders | 85.20 | 350.00 | 29,820.00 | 295.00 | 25,134.00 | 143.606 |
| Sandra Duca | 305.30 | 250.00 | 76,325.00 | 200.00 | 61,060.00 | 97.36 |
| Seth Harrison | 274.12 | 125.00 | 34,265.00 | 75.00 | 20,559.00 | 36.51 |
| **WCPFG TOTAL:** | **8789.26** | | **$2,219,257.50** | | **$1,734,205.00** | |

**FOOTE, MIELKE, CHAVEZ**
**& O'NEIL ("FMCO")**

| | | | | | | |
|---|---|---|---|---|---|---|
| Alex Caron | 27.2 | 350.00 | 9,520.00 | 295.00 | 8,024.00 | 143.606 |
| Alex Dravillas | 98.2 | 350.00 | 34,370.00 | 295.00 | 28,969.00 | 143.606 |
| Edward Eastwood | 107.60 | 195.00 | 20,982.00 | 75.00 | 8,070.00 | 36.51 |
| Elizabeth Chavez | 19.00 | 195.00 | 3,705.00 | 75.00 | 1,425.00 | 36.51 |
| Kathleen Chavez | 458.8 | 600.00 | 275,280.00 | 475.00 | 217,930.00 | 231.23 |
| Kevin Noll | 65.5 | 350.00 | 22,925.00 | 200.00 | 13,180.00 | 97.36 |
| Matt Herman | 30.6 | 550.00 | 16,830.00 | 325.00 | 9,945.00 | 158.21 |
| Matt Peterson | 96.7 | 195.00 | 18,856.50 | 75.00 | 7,252.50 | 36.51 |
| Michael Wong | 2.9 | 350.00 | 1,015.00 | 295.00 | 855.5 | 143.606 |
| Omar Salguero | 637.9 | 350.00 | 223,265.00 | 200.00 | 127,580.00 | 97.36 |
| Peter Currie | 1290.1 | 550.00 | 709,555.00 | 475.00 | 612,797.50 | 231.23 |
| Robert Foote | 141.5 | 650.00 | 91,975.00 | 475.00 | 67,212.50 | 231.23 |
| Steve Janezic | 52.25 | 195.00 | 10,188.75 | 75.00 | 3,918.75 | 36.51 |
| **FMCO TOTAL:** | **3028.25** | | **$1,438,467.25** | | **$1,107,159.75** | |

**STEPHEN E. HERETICK P.C. ("HERETICK")**

| | | | | | | |
|---|---|---|---|---|---|---|
| Stephen Heretick | 207.13 | 385.00 | 79,746.33 | 385.00 | 79,746.33 | 187.418 |
| Paralegal(s) | 61.05 | 75.00 | 4,578.75 | 75.00 | 4,578.75 | 36.51 |
| **HERETICK TOTAL:** | **268.18** | | **84,325.08** | | **84,325.08** | |

| | | | | |
|---|---|---|---|---|
| TOTAL FEES | | $3,742,049.83 | | $2,925,689.83 |
| TOTAL EXPENSES | | $309,269.66 | | $309,269.66 |

**TOTAL FEES AND EXPENSES**

| | | | |
|---|---|---|---|
| **$4,051,346.49** | **$3,234,986.49** | | **$1,575,000.00** |

Plaintiffs' counsel have submitted affidavits and charts which indicate their fees and expenses.[2]  Counsel have also provided declarations from outside counsel and independent local attorneys stating that these rates are reasonable and consistent with the rates of other attorneys with comparable knowledge, competency, and experience.  They also cite *Carr v. Rest Inn, Inc.*, No. 2:14cv 609, 2015 WL5177600, at *1 (E.D. Va. Sept. 3, 2015), which provides little support for counsels' fee rate.  As indicated in this Court's Memorandum Opinion and Order of October 21, 2015 in this case, the Vienna Metro Matrix chart rates that Plaintiffs' counsel cite are higher than the standard rates in the Norfolk Division of the Eastern District of Virginia where this case is filed, which is 200 miles from the Washington, D.C. metropolitan area.  *See Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *3-4 (E.D. Va. Sept. 3, 2015); *Patel v. Barot*, 15 F. Supp. 3d 648, 657 (E.D. Va. 2014); *Winningear v. City of Norfolk*, Civ. A. No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014); *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027, at *6 (E.D. Va. Apr. 12, 2013).  However, considering that counsel have now charged a reduced hourly rate, the Court finds that Plaintiffs' counsel have demonstrated that their rates are reasonable.

## 2. Reasonable Hours Expended

Plaintiffs' counsel seek attorney fees for a total of 12085.69 billable hours.  This billable hours total consists of the billable hours from the following three law firms: Wiggins Childs Pantazis Fisher & Goldfarb ("WCPFG") – 8,789.26 hours; Foote, Mielke, Chavez & O' Neil ("FMCO") – 3028.25 hours; Law Office of Stephen E. Heretick, P.C. – 268.18 hours.  Counsel have submitted over four hundred pages of billing sheets and declarations to support their fee requests.

---

[2] Counsel include the Law Office of Stephen E. Heretick, the firm of Foote, Mielke, Chavez & O'Neil, and the firm of Wiggins Childs Pantazis Fisher & Goldfarb.

The Parties have agreed that counsel should receive $1,575,000 attorney fees. Counsel argues that they billed at a reduced hourly fee and the actual attorney fees are over $3,000,000. Nevertheless, after a tedious review of all records counsel submitted, the Court finds that counsel have continued to provide inadequate documentation to justify counsel fees of $1,575,000. While Plaintiffs' counsel provide the billing records with the name, role, hourly rate, amount of hours, and total fee claimed for each attorney and paralegal, there is still inadequate information regarding the nature of the work done. The records contain vague and unspecified charges, mixed billing entries, overcharges, and clerical tasks charged at attorney or paralegal hourly rates.

To impress the Court with the scope of their work after a second request from the Court to provide support for their requested fees, counsel submitted outlines of tasks, a majority of which were clerical tasks that attorneys are not responsible to perform and cannot be billed at an attorney's hourly rate. *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n.10 (1989) (noting that clerical or secretarial tasks should not to be billed at lawyers' rates, even if a lawyer performs them). The billing statements also included clerical tasks performed by paralegals, which are more appropriate for a secretary and cannot be billed at a paralegal's hourly rate. *Id.* ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). For example, counsel indicated that they performed the following clerical tasks:

- Sent out Direct Notice to over **275,000** potential claimants;
- Collected and filed over **6,276** Consents to Join;
- Mailed out over **1,900** interrogatory requests;
- Mailed out over **1,900** requests for production;
- Sent out direct notice of discovery obligations to **6,276** members of the collective;

- Sent out direct notice regarding updating contact information and claims information to **4,209** members of the collective.

Pls.' Second Unopposed Pet. for Approval of Att'y Fees and Expenses and Incorporated Mem. 8-9, ECF No. 566.

The billing records also reflect multiple billing deficiencies and excessive charges for services. Some examples are appropriate. On September 12, 2014, in the "FMCO" fee petition, there is a charge of $3,420 at an hourly rate of $475 for 7.2 hours to "review all local rules of the USDC for the Eastern District of Virginia." This being a civil case, review of this Court's local civil rules may be accomplished at a maximum of thirty minutes, even by a first year law student. On January 17, 2013, a billing entry lists "come up with a comprehensive list of email search terms" for 7.8 hours at a cost of $3,705. Additionally, from December 7, 2012 - January 1, 2013, several entries indicate "return and answer collective calls" or "fielding collective member calls" for 4 to 7.2 hours each day. On May 20, 21, and 22, 2013 there are entries for "document review for depositions" of 8.6, 9.2, and 9.4 hours respectively without any other details. The Court cannot discern to what this work pertained.

There are also numerous other vague charges, to include references to "research." The court in *Tomazzoli v. Sheedy* found that time billed for "research" was "particularly vague and considerably more than required" where billing entries simply referred to "research" in contrast to an entry that listed "Research RE: Punitive damages." 804 F.2d 93, 97-98 (7th Cir. 1986). The court also found the number of hours attributable to research unascertainable where "research" was listed with other tasks but only a single total for the combined work was provided. *Id.*

On March 19, April 1, and April 12, 2013, a billing entry simply lists "Travel from DeKalb, IL to ORD & ORD to Birmingham" for 5 hours at a cost of $1,000 respectively per trip. The purpose of this travel is not provided. On March 20 and 21, 2013, there is an entry for 10 and 9 hours respectively to "review consent to join forms." The consent to join form is a one-half page document containing the signature and address of the opt-in Plaintiffs. If checking for completeness, this is a clerical or paralegal task which should not have been charged at the attorney hourly rate of $200 per hour.

The time records simply suffer from a lack of specificity. No time records are more illustrative of a flagrant deficiency of information than the time records of "WCPEF." The October 24 and November 7, 2012 entries state "motion" for 2 and 3 hours respectively for a charge of $590 and $885 respectively. Still numerous other entries simply state "emails" with an hourly charge of $295 per hour. On November 9, 2012, the entry simply states "filings," 3 hours at a charge of $885. On January 14, 2013, a mixed billing entry charging $4,425 for 15 hours reads "consent filing; meetings; emails; phone calls; discovery; doc review; depo review." In addition to being vague, these charges appear to contain clerical tasks, and the Court cannot determine the reasonableness of the time spent.

Additionally, at an hourly rate of $475 there are billable hour entries for "document review for 30(b)(6) depositions" on:

- May 21, 2013 for 6.2 hours at a total of $2,945
- May 27, 2013 for 8.2 hours at a total of $3,895
- May 28, 2013 for 8.4 hours at a total of $3,990
- May 29, 2013 for 9.4 hours at a total of $4,465
- June 5, 2013 for 9.2 hours at a total of $4,370

- June 7, 2013 for 10.3 hours at a total of $4,892.

These entries provide the Court no information about which Dollar Tree employee was being deposed or whether this attorney even deposed the employee. Additionally, the records reflect an inordinate amount of "conference call" and "meeting with co-counsel" entries. No details are provided on the reason for the conference calls or who was included in the conference calls.

The Court cannot chronical the plethora of vague entries in this combined fee petition. Given the abundance of billing deficiencies, the Court cannot determine whether the hours Plaintiffs' counsel expended are reasonable. The Court has considered the *Johnson* factors to the extent applicable. This case was a routine FLSA matter that did not require unusual expertise. Additionally, this case was settled pre-trial during the initial discovery phase before protracted litigation occurred. The information required for calculations and proof in the case was within the scope of discovery and obtained early in discovery. The Defendant provided most of the necessary data to verify Plaintiffs' claims. Further, despite the number of depositions, the Court opines that the nature of depositions were not complex given the nature of the issues in the case. For most of the depositions, counsel merely needed to inquire about the circumstances of hours worked and whether employees were properly compensated for overtime and missed lunch breaks.

The Court recognizes that fee awards need not be proportionate to the results obtained by a plaintiff. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008), *aff'd*, 323 F. App'x 829 (11th Cir. 2009); *Andrews v. United States,* 122 F.3d 1367, 1376 (11th Cir. 1997) (citing *Riverside v. Rivera*, 477 U.S. 561(1986)). However, the Supreme Court has noted that the success achieved in a case is one of the most important considerations in determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983). Plaintiffs

initially claimed $5,000,000 in damages for over 6,000 Plaintiffs and staffed the case for this amount. However, the case is now being settled in the amount of $600,000 for 4,209 Plaintiffs. In *Powell*, the court found, "Counsel's actions, such as unrealistic and legally unsupportable damage calculations which derail settlement negotiations prior to suit and require the hiring of experts and mandate numerous pretrial hearings and briefings and, ultimately, the appointment of a special master, require a reduction in an attorney fee award." 547 F. Supp. 2d at 1283. Plaintiffs' counsel have indicated they relied on inaccurate data in their initial estimates. The results are far less than what counsel contemplated, while the attorneys' fees are far greater than the traditional 20-30% of the settlement fund.

The Court has statutory responsibility to independently examine both the settlement fund and attorneys' fees for reasonableness in approving a settlement. 29 U.S.C.. § 216 (b); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). Further, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010) (citing *Silva v. Miller,* 307 F. App'x 349, 351 (11th Cir. 2009)). While the Court has found the settlement fund amount fair and reasonable, the Court wishes to avoid further delay in litigating the requested attorneys' fee award. The Supreme Court has held, "A request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437.

Considering that counsel have twice submitted an inadequately documented fee petition, the Court is unable to assess the reasonableness of hours counsel expended to fix a lodestar. Under these circumstances, after a tedious review of the fee petition, the Court is constrained to

assess attorneys' fees it deems appropriate. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433.  In reducing an attorneys' fee award, the court in *Lipsett v. Blanco* stated, "[I]n cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance."  975 F.2d 934, 938 (1st Cir. 1992). The court also noted that the billing records contained "gauzy generalities….so nebulous that they fail to 'allow[ ] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent.'" *Id.*  Plaintiffs' counsel have failed to meet their burden of demonstrating an award of $1,575,000 in attorneys' fees is reasonable.

## IV.    CONCLUSION

For the reasons stated above, the Parties' Third Joint Motion for Approval of Settlement is **GRANTED**.  The settlement fund in the gross amount of $600,000 is **APPROVED**. Plaintiffs' Unopposed Petition for Approval of Attorneys' Fees and Expenses is **GRANTED** in Part and **DENIED** in Part.  The request to approve $1,575,000 in attorneys' fees and expenses is **DENIED**.  After a tedious review of the attorney fee petition and consideration of the costs outlined, the Court finds it appropriate to reduce the fee request.  The Court hereby **APPROVES** $1,000,000 in attorneys' fees, costs, and expenses.  No funds shall revert to Defendant until the claims of all Plaintiffs have been paid.

The Parties are **ORDERED** to submit a dismissal order within **TWENTY (20) DAYS** of the date of this Order.

The Court will retain jurisdiction of this case to enforce the settlement agreement.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record.

**IT IS SO ORDERED**.

Norfolk, Virginia
June   *1*   , 2016

Raymond A. Jackson
United States District Judge